STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael R. ANDREWS, Jr., Defendant-Appellant.

Supreme Court

*No. 94–1888–CR. Oral argument April 3, 1996.—Decided June 4, 1996.*

(Also reported in 549 N.W.2d 210.)

For the defendant-appellant there were briefs by *Robert C. Raymond, Roxanne F. Felizmena* and *Raymond Law Office*, Milwaukee and oral argument by *Robert C. Raymond.*

For the plaintiff-respondent the cause was argued by *Mary E. Burke*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

JANINE P. GESKE, J.   This case comes before us on certification from the court of appeals pursuant to Wis. Stat. § (Rule) 809.61 (1993-1994) for review of a judgment of conviction entered against Michael R. Andrews, Jr. (Andrews). This conviction arose from an incident that occurred while Andrews was visiting a friend's apartment where police executing a premises search warrant discovered marijuana in Andrews' duf-

fel bag. After an unsuccessful motion to suppress the evidence, on the grounds that search of a visitor's possessions violates the Fourth Amendment proscription against unreasonable searches, Andrews pled guilty to and was convicted of one count of possession of a controlled substance with intent to deliver.

The issue before us is whether the police, while executing a search warrant for private premises, may search the belongings of a visitor who happens to be on those premises. We conclude that police may search all items found on the premises that are plausible repositories for the objects of the search, except those worn by or in the physical possession of persons whose search is not authorized by the warrant. The search was proper under the warrant because the duffel bag was not in Andrews' possession at the time, and could reasonably contain the marijuana, baggies or paraphernalia sought. Thus, we affirm the judgment of conviction.

## I.

The facts, as relevant to this opinion, are as follows. Washington County Circuit Judge Richard T. Becker issued a search warrant for the premises of 729 Timberline Trail Apartment 5, City of Hartford, Wisconsin, based upon the sworn testimony of Deputy Sheriff James Wolf of the multi-jurisdictional drug unit. He identified the occupant of that apartment as Ms. Terry Simko. In support of the warrant, Deputy Wolf testified that stems, seeds, and leafy material testing positive for THC, as well as two marijuana pipes containing residue, and a ziplock baggie containing marijuana particles had been retrieved from Simko's garbage. The judge was satisfied that probable cause existed justifying a search of Simko's apartment

for contraband as evidence of the crime of possession of a controlled substance.[1]

At the suppression hearing, Andrews testified that he had gone to Simko's apartment to study. He indicated that the two of them were in the master bedroom studying when they heard a knock at the front door. Simko and her son answered the door. Andrews exited the bedroom and walked down the hall toward the door when he heard something about a search warrant. Andrews testified that an officer, whom he could not later positively identify, confronted and frisked him. He believed this was the same officer who handled a drug dog brought onto the premises. In response to questions from the officer, Andrews responded that he did not live at the apartment and that he owned a duffel bag which was in the master bedroom. Andrews was then told to sit at the dinette while the police searched the apartment.

The drug dog reacted to the duffel bag in the master bedroom. Deputy Wolf, who was searching that room with Officer Boudry (the dog handler), then opened the duffel bag and searched it. Underneath some notebooks and papers, Deputy Wolf found a large plastic bag with smaller baggies inside containing marijuana. The duffel bag also contained a hand-held scale and other drug paraphernalia. Deputy Wolf testified that, at the time of the search, he assumed the duffel bag belonged to the apartment's occupant, Ms. Simko.

Upon determining that the duffel bag in fact belonged to Andrews, the police arrested Andrews who was subsequently charged with possession of a controlled substance (marijuana) with intent to deliver

---

[1] Andrews does not contest the sufficiency or validity of the warrant, only the proper scope of its execution.

and possession of a controlled substance (marijuana) without tax stamps. The defense filed a motion to suppress, arguing that the search of the duffel bag was unreasonable and violative of the Fourth Amendment because it was not authorized under the search warrant issued for Simko's residence. The circuit court denied the motion, finding that the search was proper both under the authority of the warrant, and pursuant to probable cause supplied by the dog sniff and exigent circumstances presented by the mobility of the bag.[2]

Upon the State's motion at the plea hearing, the circuit court dismissed the tax stamp charge. Andrews pled guilty to one count of possession of a controlled substance with intent to deliver. He was sentenced to three years in prison (imposed and stayed) and three years of probation with one year in jail as a condition of probation. Andrews filed an appeal and this court subsequently granted certification from the court of appeals.

## II.

The issue before us is one of first impression in Wisconsin—may any belongings of a visitor/non-resident be searched in the execution of a premises only search warrant. The focus of this appeal is the circuit court's denial of Andrews' motion to suppress. When this court reviews a denial of a suppression motion "we will uphold the trial court's findings of fact unless they are against the great weight and clear preponderance of the evidence." *State v. Whitrock*, 161 Wis. 2d 960,

---

[2] Because we find the search to fall within the scope of the warrant, we do not reach the issue of whether the situation viewed in its entirety would have provided the probable cause and exigent circumstances necessary to justify a warrantless search.

973, 468 N.W.2d 696 (1991). However, the question of whether the facts satisfy constitutional guarantees is one of law which we review de novo. *Id.*

Both the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution guarantee that persons shall be secure from unreasonable searches and seizures.[3] This court traditionally interprets the two very similar provisions in concert. *State v. DeSmidt*, 155 Wis. 2d 119, 129, 454 N.W.2d 780 (1990). The development of Wisconsin law on search and seizure parallels that developed by the United States Supreme Court. *State v. Guy*, 172 Wis. 2d 86, 93, 492 N.W.2d 311 (1992), *cert. denied*, 509 U.S. 914 (1993).

Generally a premises warrant authorizes the search of all items on the premises so long as those items are plausible receptacles of the objects of the search. The Supreme Court has held that:

> A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility

---

[3] Art. I, sec. 11 of the Wisconsin Constitution provides:

Searches and seizures . . . The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

The Fourth Amendment of the federal constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

389

that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found.

*United States v. Ross,* 456 U.S. 798, 820-21 (1982). However, courts have found that special concerns are raised when the items searched belong to non-residents or visitors to the premises described in the warrant. *See, e.g., United States v. Giwa,* 831 F.2d 538 (5th Cir. 1987).

Search warrants must be issued by a neutral, disinterested magistrate to whom it has been demonstrated that there is probable cause to believe that the evidence sought will aid in prosecution for a particular offense, and the warrant must describe with particularity the place to be searched and things to be seized. *Dalia v. United States,* 441 U.S. 238, 255 (1979). This court has stated that the particularity requirement of the Fourth Amendment satisfies three objectives by preventing general searches, the issuance of warrants on less than probable cause, and the seizure of objects different from those described in the warrant. *State v. Petrone,* 161 Wis. 2d 530, 540, 468 N.W.2d 676 (1991), *cert. denied,* 502 U.S. 925 (1991).

Even when the validity of the warrant is itself uncontested, the manner in which it is executed may be subjected to later judicial review. A search "must be conducted reasonably and appropriately limited to the scope permitted by the warrant. Whether an item seized is within the scope of a search warrant depends

on the terms of the warrant and the nature of the items seized." *Id.* at 542.

The Supreme Court has stated that, "[w]herever a man may be, he is entitled to know that he will remain free from unreasonable searches and seizures." *Katz v. United States*, 389 U.S. 347, 359 (1967). And the "application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (citations omitted).

Thus, the question we face is whether a visitor's belongings fall within the scope of a warrant issued for another's premises and thus may be lawfully searched, or whether they are prohibited as unreasonable invasions of the privacy of an individual who just happens to be on those premises.

Jurisdictions are divided on the question of which personal effects, if any, of a non-occupant or visitor can be searched under a premises warrant. Courts have utilized several, sometimes overlapping, approaches with the primary ones known as the "relationship," "notice" and "physical proximity or possession" tests. We will briefly review the basic tenets and development of each in order to place our decision in the appropriate context.

Under the "relationship" test, a court looks first to the relationship between the owner of the belongings in question and the place named in the warrant; the personal effects of a "mere visitor" cannot be searched pursuant to a premises warrant. Although many courts subscribing to this construct do not clearly articulate its legal basis, those that do tie it to the particularity

391

requirement of the Fourth Amendment. This was most clearly explained in *Commonwealth v. Platou*, 312 A.2d 29, 32 (Pa. 1973), *overruled by Commonwealth v. Reese*, 549 A.2d 909, 911 (Pa. 1988), which held that a warrant authorizing search of a place could not be extended to include the search of things not belonging to the occupant of the premises. The court reasoned that because the police had no prior knowledge that the appellant would be visiting the premises, "[a] fortiori, neither did the issuing magistrate. The warrant therefore could not possibly have described appellant's effects. If the officer executing the warrant, by his own choice, could extend its reach by searching things not particularly described therein, the constitutional prescription of particularity would be violated." *Platou*, 312 A.2d at 33.

The most frequently cited example of the relationship approach is *United States v. Micheli*, 487 F.2d 429 (1st Cir. 1973).[4] There, the federal appellate court upheld the search of a briefcase found under a desk during the search of a business on a premises warrant, even though the police knew that it belonged to a co-owner who was not named in the warrant. The court concluded that the question of which personal effects fall within the scope of a premises warrant requires analysis of the relationship of the person to the place in order to determine "why" the belongings are on the premises. *Id.* at 431-32. The court held that, as co-owner of the business, the defendant was not a "mere visitor or passerby" and his "special relationship to the place" put his personal belongings within the warrant's scope. *Id.* at 432.

---

[4] *See also United States v. Young*, 909 F.2d 442, 445 (11th Cir. 1990), *cert. denied*, 502 U.S. 825 (1991); *United States v. Giwa*, 831 F.2d 538, 545 (5th Cir. 1987).

Other courts have modified the relationship test by adding a "notice" requirement. Jurisdictions utilizing this approach begin with the premise that items known to belong to visitors cannot be searched.[5] However, under this formulation, police lacking notice that property belongs to a visitor may assume that all property on the premises is owned by the occupant and, therefore, is searchable.[6] In the leading case, Hawaii's Supreme Court held that the search of a purse, which was on the floor when the police initiated their search but was picked up by its owner during execution of the warrant, violated the Fourth Amendment. *State v. Nabarro*, 525 P.2d 573 (Haw. 1974). The court reasoned that under the circumstances:

> there was no question that the police had notice, prior to the search, that Miss Nabarro—indisputably a non-resident visitor to the premises—was the owner of the purse. The warrant named two men as the occupants of the room to be searched, making it likely that any purses, which are characteristically female attire, found in the room belonged to non-residents.

*Id.* at 588. Because the police had notice, the court held that the search of the purse was beyond the scope of the warrant and, therefore, impermissible. *Id.*

Appellants have seized on the issue of notice in contesting the validity of searches of visitors' belongings. The primary challenge is that, although no actual notice of ownership was given, officers "should have

---

[5] *See Hummel-Jones v. Strope et al.*, 25 F.3d 647, 652 (8th Cir. 1994).

[6] *See, e.g., State v. Thomas*, 818 S.W.2d 350, 359 (Tenn. Crim. App. 1991); *People v. McCabe*, 192 Cal. Rptr. 635, 636 (Cal. Ct. App. 1983).

known" the items searched belonged to non-residents. Some courts (in both jurisdictions that employ relationship/notice and ones which do not) have responded by adding the caveat that officers executing a warrant have no duty or obligation to establish ownership of items found on the premises before searching them. *See, e.g., Carman v. State*, 602 P.2d 1255, 1262 (Alaska 1979) (concluding search was legal because there was no notice purse belonged to visiting sister of one of three men living on premises, and police had no duty to solicit information as to ownership).[7]

Other courts have added an additional modification to the relationship test (as already modified by the notice requirement). Under this approach, police can search items they have actual knowledge belong to a non-resident if "someone within the premises has had an opportunity to conceal contraband within the personal effects of the non-resident immediately prior to" the execution of the warrant. *People v. McCabe*, 192 Cal. Rptr. 635, 637 (Cal. Ct. App. 1983).[8]

In stark contrast to the checklist of criteria that must be satisfied pursuant to the prodigy of the rela-

[7] *See also State v. Wills*, 524 N.W.2d 507, 510-11 (Minn. Ct. App. 1994); *State v. Kurtz*, 612 P.2d 749, 751 (Or. Ct. App. 1980).

[8] *See also Thomas*, 818 S.W.2d at 359-60 (relying on *McCabe*, finding search exceeded warrant where officers knew or should have known purse belonged to visitor and there "was no opportunity for anyone to have hidden [in it] the cocaine suspected on the premises"); *People v. Coleman*, 461 N.W.2d 615, 619 & n.10 (Mich. 1990) (citing Wayne R. LaFave, 2 *Search and Seizure* § 4.10(b) for the proposition that police may search even known personal effects of a visitor if they reasonably believe the visitor "had an opportunity to conceal contraband in his personal belongings immediately prior to or during the execution of the premises search warrant").

tionship test, courts applying the "physical possession" or "proximity" test impose the sole limitation that the police may not search items which are worn by or within the physical possession of persons whose search is not authorized in the warrant. Such belongings (for example jackets and purses) are considered "an extension of the person" and therefore not searchable under a premises only warrant. However, the same items may be searched, as they are considered just another part of the premises, if they have been set down, i.e. if the visitor has relinquished control over them. Many sources cite *United States v. Teller*, 397 F.2d 494, 497 (7th Cir. 1968), *cert. denied*, 393 U.S. 937 (1968), as the progenitor of this test, but it is notable that the item in question in that case (a purse that had been set down on a bed and was therefore deemed searchable as "merely another household item") was owned by the wife of the person named in the warrant, and was herself an occupant of the premises.[9]

Both the State and Andrews urge this court to analyze searches of visitor's belongings under the relationship test as modified by the *Nabarro* notice requirement. They disagree only in the result when that test is applied to the given facts. Andrews asserts

[9] *Accord State v. Hill*, 870 P.2d 313, 315 (Wash. 1994) (recognizing general principle that "officers have no authority under a premises warrant to search personal effects an individual is wearing or holding"); *State v. Jackson*, 873 P.2d 1166, 1169 (Utah Ct. App. 1994) (concluding that purse fell within scope of premises search warrant because it was not in the physical possession of the defendant when searched); *Commonwealth v. Reese*, 549 A.2d 909, 911 (Pa. 1988) (holding that a visitor's personal property, which is not on the person, may be searched as long as it "is a plausible repository for the object of the search").

that because he told one officer that the duffel bag in the master bedroom was his, the information should be imputed to the rest of the search team, particularly to the officer jointly searching the master bedroom, Detective Wolf. The State counters that the circuit court found that Detective Wolf did not know that anyone other than Simko owned the bag at the time he opened and searched it. Further, the State argues that notice should not be imputed and, lacking actual knowledge that a particular item belongs to a visitor, an officer may reasonably search all items found on the premises.

However, we need not decide the issue of imputation of knowledge of ownership because we reject the relationship/notice test and adopt the physical proximity test in its stead.

Although we do not have the benefit of an analysis by the United States Supreme Court that is directly on point, the Court has spoken on the issue of the proper scope of searches conducted pursuant to warrants. In *Ybarra v. Illinois*, 444 U.S. 85 (1979), the Supreme Court held that a warrant authorizing the search of a tavern and the person of the bartender did not justify the search of any of the patrons present during execution of the warrant. The Court held that the warrant gave the police "no authority whatever to invade the constitutional protections possessed individually by the tavern's customers." *Id.* at 92 n.4. Further, "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person" because the search must be supported by probable cause particularized to that individual.[10] *Id.* at 91.

---

[10] The Court in *Ybarra v. Illinois*, 444 U.S. 85, 92-93 (1979), found the patdown of Ybarra to be unconstitutional because the

This proscription against search of the person of an individual whose search is not specifically authorized in the warrant has been expanded to bar searches of items worn by or otherwise "in the immediate possession of" a person because those items are considered extensions of the person. *See United States v. Robertson*, 833 F.2d 777, 784 (9th Cir. 1987).[11] The converse is also true—a search warrant for a person has been found to encompass the search of a bag or purse carried at the time of execution of the search warrant because it is considered a part of that person. "Containers such

police lacked any reasonable belief that he was armed and dangerous. This court subsequently distinguished *Ybarra* from a case involving a patdown of an occupant of a residence during execution of a search warrant in, *State v. Guy*, 172 Wis. 2d 86, 91-92, 98, 495 N.W.2d 311 (1992), *cert. denied*, 509 U.S. 914 (1993). There, we concluded that the challenged frisk was justified by the officer's reasonable suspicion that the defendant was armed, given: the prior determination by a magistrate of probable cause that drug trafficking was occurring at the residence, and thus the likelihood that occupants were involved in that crime; officers' testimony that previous experience indicated that weapons were often associated with drugs; and the increased danger entailed in executing a warrant in a private rather than a public place. *Id.* at 91-92.

[11] *See also People v. Reyes*, 273 Cal. Rptr. 61, 64 (Cal. Ct. App. 1990) (holding, given circumstances—police searched clothing placed within defendant's reach while he was in the shower—that clothing was an extension of the person and therefore beyond scope of premises warrant); *Reese*, 549 A.2d at 911-12 (finding "jacket was not being worn by Reese and therefore, cannot be characterized as an extension of his person so as to propel its search into a search of Reese's person"); *United States v. Johnson*, 475 F.2d 977, 979 (D.C. Cir. 1973) (noting that purse "not worn" therefore not "an extension of her person so as to make the search one of her person").

as [clothing pockets, purses or shoulder bags], while appended to the body, are so closely associated with the person that they are identified with and included within the concept of one's person." *United States v. Graham*, 638 F.2d 1111, 1114 (7th Cir. 1981), *cert. denied*, 450 U.S. 1034 (1981).

We also find the Supreme Court's decision in *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978), (which focuses on the search and seizure of things, not people) relevant to our inquiry. *Zurcher* arose from a demonstration and the occupation of the Stanford University Hospital administrative offices. As police entered one end of a barricaded hallway, a group of demonstrators exited at the far end and attacked police officers there with sticks and clubs. One of the injured officers saw a person taking photographs and two days later the student newspaper, the Stanford Daily, published photos of the clash. The district attorney obtained a warrant authorizing search of the Stanford Daily's premises for "[n]egatives and photographs and films, evidence material and relevant to the identity of the perpetrators of felonies, to wit, Battery on a Peace Officer, and Assault with a Deadly Weapon, . . ." *Id.* at 551. The newspaper brought a civil action under 42 U.S.C. § 1983 claiming that the search of the office violated their constitutional rights. *Id.* at 552.

The *Zurcher* Court described the issue as centering on how the Fourth Amendment should be construed and applied in situations involving a "third party" search under color of a warrant supported by probable cause that evidence of a crime is located on specific property but which does not purport to demonstrate probable cause that the owner of the property is involved in the crime. *Id.* at 553. The Court concluded that nothing in the Fourth Amendment barred issu-

ance of third party warrants, as the "critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Id.* at 554, 556.

Although the case did not hinge on the propriety of a search of a visitor's belongings, we find the legal principles articulated in *United States v. Schmude*, 699 F.Supp. 200 (E.D. Wis. 1988), helpful in our analysis. In *Schmude*, the federal district court for Eastern Wisconsin denied a motion to suppress evidence gathered from a vehicle located on the premises for which a valid search warrant had been issued:

> Because the search warrant and accompanying affidavit established probable cause for the search of the premises for firearms, ammunition and U.S. currency, and the affidavit indicates that Schmude was the target of the search, this court does not believe that ownership or control of the various containers searched on the premises should be a relevant consideration. The warrant authorized the search of the premises, limited only by the nature of what the agents were searching for.

*Id.* at 202. Therefore, the court concluded that the automobile was within the scope of the warrant even though it was not owned by the person who was the target of the search.

In articulating the physical proximity test, the *Teller* court did not hinge its decision on the relationship of persons present to the premises, or on notice of the ownership of an item, but on whether the item searched shared such a close physical proximity to a person (any person—occupant or visitor) that it could

399

be considered an extension of that person. We feel that this test frames the issue in its proper legal context. As the Supreme Court has said, "[s]earch warrants are not directed at persons; they authorize the search of 'place[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized." *Zurcher*, 436 U.S. at 555. A premises search warrant authorizes search of items found on those premises regardless of ownership; a premises only search warrant, without more, does not authorize the search of a person or of objects worn or possessed so as to constitute extensions of the person. The critical nexus is not an abstract, relational one between person and place, but a concrete, physical one between person and thing.

None of the approaches yet devised lack detractors. Some courts have criticized the physical proximity test as being easily thwarted because a visitor could simply pick up an item containing contraband when police enter to execute a warrant.[12] The most frequently cited source of this criticism is *Walker v. United States*, 327 F.2d 597, 600 (D.C. Cir. 1963), *cert. denied*, 377 U.S. 956 (1964). There, the federal appellate court allowed the search of a handheld wallet and bag, reasoning that to rule otherwise, "would be to suggest that a warrant to search premises may be frustrated by the device of simply picking up the guilty object and holding it in one's hand." *Walker*, 327 F.2d at 600.

However, critics usually fail to mention the facts of this pre-*Teller* case in which the police executing the warrant arrived to find the door of the premises open

---

[12] *See, e.g., State v. Wills*, 524 N.W.2d 507, 510 (Minn. Ct. App. 1994); *United States v. Micheli*, 487 F.2d 429, 431 (1st Cir. 1973).

with both occupants named in the warrant visible inside. When the officer announced his presence and identity as law enforcement, he saw the male occupant hand a wallet and bag to the female occupant. *Walker*, 327 F.2d at 598. The *Walker* court found that, given the factual scenario, it was not unreasonable for the officer to believe that the heroin sought was contained in those items and therefore the premises warrant encompassed their seizure and search. *Id.* at 600. Further, the court repeatedly stressed that its holding was limited to the facts of the case, commenting:

> [t]his is not to say that the authority conferred by a warrant to search premises is coterminous with that residing in a warrant to search the person. *United States v. Di Re*, 332 U.S. 581 (1948). There are obviously situations where the grant of the one cannot be enlarged to include the other.

*Id.*

We find that the relationship/notice test is much more susceptible to abuse, as illustrated in the following points raised during oral argument: a visitor could simply assert ownership to immunize property from search or, conversely, police could make a point of never being put on notice so that they could assume all items were searchable. The Pennsylvania Supreme Court expressed similar concerns in *Commonwealth v. Reese*, 549 A.2d 909 (Pa. 1988). There, it overruled its 1973 decision, *Platou*, in which it had utilized the relationship test. The court commented that under the old test:

> visitors to the premises could frustrate the efforts of police by placing contraband among their unworn personal effects or by announcing ownership of various articles of clothing and containers in order to

401

place those items beyond the scope of the warrant. We cannot sanction any rule that through fraud and gamesmanship erects barriers to the effective and legitimate execution of search warrants.

*Reese*, 549 A.2d at 911.

Courts have inconsistently applied the relationship/notice test which perhaps provides the strongest argument against its use. The parameters of the test are so nebulous as to provide little guidance, as evidenced by the cases employing it which have arrived at opposite conclusions given very similar fact patterns. For example, where the warrant names only male occupants, the search of a woman's purse has been found to be: (a) within the scope of the warrant because there was no notice of ownership (*Carman v. State*, 602 P.2d 1255 (Alaska 1979)), and conversely (b) illegal because the police could not have reasonably believed it belonged to the man named in the warrant (*State v. Lambert*, 710 P.2d 693 (Kan. 1985)).

Jurists have had a particularly hard time distinguishing visitors from occupants, which is a critical determination in the relationship test under which the police cannot search the belongings of a "mere visitor." For example, a person found naked or partially clothed and/or sleeping when police arrive to execute the warrant has been alternatively deemed: (a) more than a "mere visitor" because nakedness evinced a connection with the premises (*State v. Hill*, 870 P.2d 313 (Wash. 1994)) or (b) a "mere visitor" even though obviously an overnight guest who had gotten out of bed to open the door (*State v. Thomas*, 818 S.W.2d 350 (Tenn. Crim. App. 1991)). Courts have found time of day to be no more a definitive factor than the degree of nakedness. Compare, *United States v. Gray*, 814 F.2d 49, 51 (1st Cir. 1987), in which the court found the defendant was

not merely a casual visitor because he was in a private residence in which a drug deal had just occurred at "the unusual hour of 3:45 a.m." to *Hummel-Jones v. Strope, et al.*, 25 F.3d 647, 652 (8th Cir. 1994), where the court found that a couple spending the night in a birthing clinic was merely patronizing the establishment and therefore the 2 a.m. search of their belongings was unreasonable under the Fourth Amendment.

Taking into account the Fourth Amendment principles articulated by the Supreme Court and the practical considerations posed by application of the various proposed tests, we conclude that the physical proximity test has the strongest legal basis and is the most practical and easiest to apply for both the police executing a search and a judge subsequently reviewing the propriety of the search. Thus, we hold that police can search all items found on the premises that are plausible repositories for objects named in the search warrant, except those worn by or in the physical possession of[13] persons whose search is not authorized by the warrant, irrespective of the person's status in relation to the premises.

The touchstone of the Fourth Amendment remains reasonableness. We hold that it is reasonable for officers executing a premises warrant to search all items on the premises that could contain the contra-

---

[13] As with all Fourth Amendment inquiries, reasonableness is key and the court must examine the totality of the given circumstances to determine whether the zone of privacy represented by an extension of the person has been invaded. The more divorced an object is from the person, the less reasonable is an expectation that the object falls within the protected sphere.

band or evidence sought under the warrant, except those items worn by, or in the physical possession of, persons whose search is not authorized. We believe this decision strikes the proper balance between society's interests in curtailing crime and the individual protections embodied in the Fourth Amendment. Because we conclude that the search of Andrews' duffel bag was properly within the scope of the warrant as it was neither worn by Andrews nor in his physical possession, we affirm the judgment of conviction entered by the circuit court.

*By the Court.*—The judgment of the circuit court is affirmed.