Mary B. ANDERSON, individually and as special administrator of the estate of Jerold W. Anderson, Plaintiff-Respondent,

v.

COMBUSTION ENGINEERING, INC., Defendant-Appellant.

Court of Appeals

*No. 01–1518. Oral argument May 7, 2002.—Decided May 21, 2002.*

2002 WI App 143

(Also reported in 647 N.W.2d 460.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ralph A. Weber* and *Colleen D. Ball* of *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.*, Milwaukee, and *Steven J. Kirsch* of *Murnane, Conlin, White & Brandt, P.A.*, St. Paul, Minnesota. There was oral argument by *Steven J. Kirsch*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jill A. Rakauski* of *Cascino Vaughan Law Offices, Ltd.*, Chicago, Illinois. There was oral argument by *Kevin McHargue* of *Baron & Budd*, Dallas, Texas.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. FINE, J. Combustion Engineering, Inc., appeals from a judgment entered on a jury verdict finding it twenty-nine percent responsible for Jerold Anderson's lung-cancer death. It also appeals from the trial court's related orders. The crux of Combustion Engineering's argument on this appeal is that there was insufficient expert-evidence linking asbestos in its boilers to Mr. Anderson's mesothelioma to support the jury's verdict. We affirm.

**I.**

¶ 2. Jerold Anderson worked for many years as a machinist for the Wisconsin Electric Power Company at its Oak Creek power plant. There were eight coal-fired boilers at the plant during this time. The boilers were

very large—some seven stories tall. Six of the eight boilers were made by Combustion Engineering or its predecessor. Combustion Engineering's boilers were insulated with asbestos. There were many sources of asbestos at the Oak Creek plant when Mr. Anderson worked there. He died of malignant mesothelioma in 1998. The parties agree that asbestos can cause mesothelioma.

¶ 3. Mary Anderson, Jerold Anderson's wife, individually and as special administrator of his estate, sued Combustion Engineering and many other companies that she contended were responsible for asbestos contamination at the Oak Creek plant and, therefore, her husband's death. She settled with all but Combustion Engineering. Including Combustion Engineering, there were eleven defendants on the special verdict form submitted to the jury. As noted, Combustion Engineering claims that there was insufficient expert-evidence linking asbestos in its boilers to Mr. Anderson's mesothelioma to support the jury's verdict.

## II.

¶ 4. When assessing a contention that a jury's verdict is not supported by the evidence, our scope of review is limited.

> If there is any credible evidence that will support the jury's verdict, the verdict must be affirmed. We must review a jury's verdict with great deference and indulge in every presumption in support of the verdict. This presumption is even more true when the verdict has the trial court's approval.

*Anderson v. Alfa-Laval Agri, Inc.*, 209 Wis. 2d 337, 352, 564 N.W.2d 788, 795 (Ct. App. 1997) (internal citations

393

omitted). Additionally, in Wisconsin, unlike some other jurisdictions including the federal courts, *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590–595 (1993) (trial judges must scrutinize scientific expert testimony to ensure that it has evidentiary reliability); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–149 (1999) (*Daubert* applies to all expert opinion offered under RULE 702 of the Federal Rules of Evidence); FED. R. EVID. 702 (requiring that proffered expert testimony must be: (1) "based upon sufficient facts or data"; (2) "the product of reliable principles and methods"; and (3) based on the witness's application of those "principles and methods reliably to the facts of the case"), WIS. STAT. RULE § 907.02 sets a fairly low threshold for the admissibility of opinion evidence that is beyond the presumed ken of ordinary jurors. *Martindale v. Ripp*, 2001 WI 113, ¶ 68, 246 Wis. 2d 67, 105, 629 N.W.2d 698, 715 ("The standard in this state for the admission of expert testimony is not stringent."). Moreover, a jury is entitled to draw reasonable inferences from expert testimony even if, at first blush, it may appear that the jury's conclusions based on those inferences require proof by specialized expert testimony. *Id.*, 2001 WI 113 at ¶ 65.

¶ 5. *Martindale* held that the trial court erroneously exercised its discretion in excluding testimony by an oral and maxillofacial surgeon that an automobile accident was a cause of Martindale's temporomandibular-joint injuries. *Id.*, 2001 WI 113 at ¶ 4. Holding that the oral surgeon should have been permitted to give this opinion, *Martindale* disagreed with the view, as expressed by the unpublished court of appeals decision affirming the trial court's exclusion of the evidence, that there " 'was no evidence' " that the physician " 'had any knowledge as to what happened to Martindale in the collision—no knowledge of the 'me-

chanics' of the accident or his actual injury, or that the impact in fact caused a 'whiplash.'" *Id.*, 2001 WI 113 at ¶ 43. *Martindale* explained:

> An accident reconstruction expert or an expert in kinematics is not required for an elementary discussion of whiplash, which is the abrupt jerking motion of the head, either backward or forward. Expert testimony on kinematics is not necessary to confirm the potential for whiplash when a fully loaded garbage truck smashes into a barely moving or stopped automobile, pushing it into another vehicle, sending it 100 to 150 feet from the point of origin, and causing $9000 in damages to the vehicle. Requiring specialized expert testimony beyond a medical expert in relatively simple automobile accident situations would escalate the cost of presenting personal injury cases without adequate justification. In short, it would present a serious issue in the administration of the legal system.

*Id.*, 2001 WI 113 at ¶ 65. Thus *Martindale*'s rationale applies with equal force here and we examine the evidence in support of the jury's verdict against this background.

¶ 6. The following evidence and the reasonable inferences the jury could draw from it support the jury's verdict:

- Victor Roggli, M.D., a board certified pathologist, the lead author of the textbook *Pathology of Asbestos Associated Diseases,* and a specialist in mesothelioma, testified that Mr. Anderson died of mesothelioma as a result of Mr. Anderson's "prior exposure to asbestos";

- Dr. Roggli testified that he found that Mr. Anderson had 3,040 "asbestos bodies per gram of wet lung tissue," and that the "normal range is 0 to

20," with one or two such bodies "in people from the general population";

- Dr. Roggli testified that the most common type of asbestos found in the lungs of workers exposed to asbestos found in boilers was amosite;

- Dr. Roggli testified that a specific test to determine the type of fibers in Mr. Anderson's lungs revealed that twenty-five of the twenty-nine examined were amosite fibers;

- Much of the asbestos in the Oak Creek plant coming from Combustion Engineering or its predecessor was amosite;

- A co-worker of Mr. Anderson, Thomas Mlinar, testified that frequent repair of Combustion Engineering's boilers at the Oak Creek plant resulted in dusty clouds of asbestos insulation material that were so thick that Mlinar could not see another worker one foot away;

- Mr. Anderson worked near Combustion Engineering's boilers at the Oak Creek plant;

- Mlinar testified that he frequently worked with Mr. Anderson when the conditions were dusty from asbestos insulation coming from Combustion Engineering's boilers;

- Donald Hakes, another of Mr. Anderson's co-workers, also testified that the area around the boilers being worked on was very dusty; and

- Machinists who, like Mr. Anderson, worked around boilers had an occupational risk of asbestos exposure.

396

¶ 7. Combustion Engineering claims that although its boilers at the Oak Creek plant had asbestos insulation, there were, as phrased in its main brief on this appeal, "numerous other companies who manufactured, supplied or installed asbestos-containing products that were used or located at a variety of other locations within the plant." It also points to testimony by one of its expert witnesses that, again as phrased by its main brief on this appeal, Mr. Anderson "did not receive a substantial exposure from any asbestos-containing product made by Combustion Engineering."

¶ 8. The witness's testimony that Mr. Anderson did not have "substantial exposure" to Combustion Engineering's asbestos centered around his contention that Mr. Anderson did not have, during his tenure at Wisconsin Electric, exposure to asbestos in any boiler made by Combustion Engineering in excess of the "threshold limit value." He told the jury that "threshold limit value" was a hypothetical exposure below which a worker would "end up in their lifetime without the disease" caused by the substance to which the value applied. The jury also heard evidence from an expert witness called by Mrs. Anderson that the "threshold limit value" originated in 1935 when several hundred companies "got together to deal with the problem they were having related to over a hundred million dollars in lawsuits filed in silicosis and asbestosis suits."

¶ 9. The jury also heard, without objection, about the goal behind the "threshold limit value," as phrased by those who helped develop it: " 'Authoritative and improved standards for the control of industrial dust should be developed which, if complied with [by] industries or by industrial companies, will act as a defense against personal injury suits.' " Combustion

397

Engineering's own expert witness conceded that the "threshold limit value was never meant to protect against cancer," and Combustion Engineering admits in its reply brief on this appeal that mesothelioma "can 'be caused by relatively low exposure to asbestos.' " (Quoting from Mrs. Anderson's brief.) Indeed, Combustion Engineering conceded in oral argument that there is no safe threshold for exposure to asbestos in connection with mesothelioma. The jury was free to disregard Combustion Engineering's contention that Mr. Anderson's exposure to its asbestos was too low to cause his cancer.

¶ 10. Combustion Engineering also contends that Mrs. Anderson did not adduce expert-witness testimony that the specific fibers in Mr. Anderson's lungs came from Combustion Engineering asbestos, and faults Mrs. Anderson's trial lawyer for arguing during summation that although there were other sources of amosite fibers in the Oak Creek plant, "the vast majority of it came from Combustion Engineering." But, as we have seen, there was evidence that there were clouds of asbestos-laden dust in the areas where Mr. Anderson worked, and that the type of fiber, amosite, found in Combustion Engineering's boilers was also found in astounding numbers in Mr. Anderson's lungs. The jury was entitled to believe this evidence and draw reasonable inferences from it. Under our standard of review, we are bound by the jury's choice.

¶ 11. Combustion Engineering also argues that Mrs. Anderson never presented to the jury a day-by-day account of Mr. Anderson's exposure to Combustion Engineering asbestos: "Crediting Hakes' and Mlinar's testimony as absolutely true, the very most that the

398

jury could reasonably conclude is that Anderson breathed some unknown quantity of 'dust' emanating from Combustion Engineering boilers on four occasions for a few hours over his 40 year career." But, here again, the jury was entitled to extrapolate from Hakes's and Mlinar's testimony about the specific instances to the conditions under which Mr. Anderson worked during his career at the Oak Creek plant, especially given the extremely high levels of amosite asbestos fibers found in his lungs. Requiring a daily log of activities and exposures would be impossible and, therefore, an intolerable burden on those claiming injuries similar to those claimed here. *Cf. Martindale*, 2001 WI 113 at ¶ 65 (law must be sensitive to not place unrealistic burdens on those seeking legal redress).

¶ 12. Finally, Combustion Engineering faults the jury for fixing Combustion Engineering's contribution to Mr. Anderson's cancer at twenty-nine percent. But, apportionment of negligence is within the jury's province, *Huss v. Yale Materials Handling Corp.*, 196 Wis. 2d 515, 534–535, 538 N.W.2d 630, 637 (Ct. App. 1995), and an appellant seeking to overturn that apportionment has a most difficult burden, *Sabinasz v. Milwaukee & Suburban Transp. Corp.*, 71 Wis. 2d 218, 223, 238 N.W.2d 99, 101–102 (1976). Indeed, as applicable here, a jury's apportionment of negligence will not be set aside unless either "the percentages attributed to the parties (in light of the facts) are grossly disproportionate" or "there was such a complete failure of proof that the verdict could only be based upon speculation." *Lautenschlager v. Hamburg*, 41 Wis. 2d 623, 628, 165 N.W.2d 129, 131 (1969).

¶ 13. As we have seen, a jury may draw reasonable inferences from the evidence even though there is no "expert" testimony directly on point. *Martindale*, 2001 WI 113 at ¶ 65. Thus, a jury's apportionment of fault in a comparative negligence case is akin to a jury's fixing an appropriate award in an eminent-domain taking case; in each, the jury is asked to reach a conclusion that is not capable of mathematical certainty. Accordingly, both here and in the cases where a jury has to set a fair-market value, the jury may "consider factors underlying an expert's opinion," and may "weigh all evidence in reaching its verdict." *Milwaukee Rescue Mission, Inc. v. Redevelopment Auth. of the City of Milwaukee*, 161 Wis. 2d 472, 485–486, 468 N.W.2d 663, 669 (1991) (jury's discretion to set fair-market value); *Martindale*, 2001 WI 113 at ¶ 65. Combustion Engineering offers us nothing other than rhetoric to support its argument that the jury's fixing its responsibility for Mr. Anderson's cancer at twenty-nine percent was an erroneous exercise of the jury's discretion.

*By the Court.*—Judgment and orders affirmed.