STATE of Wisconsin, Plaintiff-Respondent,

v.

Louis H. LaCount, Defendant-Appellant.†

Court of Appeals

*No. 2006AP672–CR. Submitted on briefs February 5, 2007.
—Decided March 20, 2007.*

2007 WI App 116

(Also reported in 732 N.W.2d 29.)

473

474

On behalf of the defendant-appellant, the cause was submitted on the briefs of *T. Christopher Kelly* of *Kelly & Habermehl, S.C.* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James M. Freimuth*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Louis LaCount appeals criminal convictions of theft by a bailee of property valued at more than $2,500 and securities fraud in the sale of a security, each relating to his employment at Gates, Paul, and Lear, L.L.C. LaCount raises four issues on appeal. First, LaCount argues the State's execution of the search warrant of GP&L's offices was unlawful because it seized business records unrelated to the warrant, which the State used as evidence of the theft by a bailee and the securities fraud charges. Second,

LaCount argues the court erred in allowing expert testimony regarding the nature of investment contracts. Third, LaCount argues the evidence was insufficient for a jury to find him guilty of securities fraud because there was no investment contract. Finally, LaCount argues the court's finding him a habitual criminal violated his right to a jury trial. We disagree with LaCount's arguments and, accordingly, affirm the judgments.

## BACKGROUND

¶ 2. LaCount was charged in a ten-count complaint. The counts revolved around three separate transactions relating to his conduct between June 1998 and October 1999, while he worked as a debt negotiator and office manager at GP&L. The first transaction involved the liquidation of assets held by SMC Corporation. The second transaction involved John Wills' alleged investment in a real estate venture. The third transaction involved the misappropriation of money belonging to Mirr Tree Service. After a preliminary hearing where one count was dismissed, the State filed an information charging LaCount with the remaining nine counts.

¶ 3. After the police executed a search warrant at GP&L's offices for financial records relating to specific clients named in the warrant's application, they discovered additional crimes relating to SMC, John Wills' investment, and Mirr Tree Service. LaCount moved to suppress the financial records relating to these additional charges because the seizures exceeded the scope of the warrant. After an evidentiary hearing, the court denied the motion.

¶ 4. The court had granted a motion to sever the securities fraud charges and this was the only charge

tried to a jury. Prior to trial, LaCount moved for and was denied an order barring expert testimony by attorney David Cohen, the supervisory counsel for the Division of Securities at the Wisconsin Department of Financial Institutions, concerning the application of securities law to the assumed facts of LaCount's agreement with Wills. The jury found LaCount guilty of securities fraud.

¶ 5. The court sentenced LaCount to eleven years in prison, the maximum sentence after enhancement for habitual criminality. LaCount objected to being sentenced as a repeater because doing so would violate his right to a jury trial. The court rejected LaCount's argument.

¶ 6. After being sentenced on the securities fraud conviction, LaCount then negotiated a plea agreement with regard to the remaining charges. He entered pleas to four counts, while four other counts were dismissed. On the Mirr Tree theft charge, the court imposed a fifteen-year prison sentence, concurrent with the sentence previously imposed on the securities fraud conviction. On the remaining counts, LaCount was placed concurrently on probation for fifteen years, but consecutive to the prison term.

DISCUSSION

## I. *The Results of a Search of GP&L's Offices Did Not Exceed the Scope of the Warrant.*

¶ 7. LaCount argues the evidence seized at GP&L's offices violated the Fourth Amendment prohibition on unreasonable searches and seizures. Whether searches and seizures are constitutionally permissible

is a question of law we review independently. *State v. Whiting*, 2003 WI App 101, ¶ 8, 264 Wis. 2d 722, 663 N.W.2d 299.

¶ 8. Here, LaCount does not argue that the warrant was constitutionally overbroad in its scope, nor does he argue that the warrant application lacked probable cause for such a search. Therefore, these issues are not before us. Rather, LaCount focuses on the execution of the search warrant because he asserts the police exceeded the scope of the warrant.

¶ 9. The execution of a search warrant "must be conducted reasonably and appropriately limited to the scope permitted by the warrant. Whether an item seized is within the scope of a search warrant depends on the terms of the warrant and the nature of the items seized." *State v. Andrews*, 201 Wis. 2d 383, 390–91, 549 N.W.2d 210 (1996). To satisfy the "particularity" requirement, a warrant "must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized." *State v. Noll*, 116 Wis. 2d 443, 450–51, 343 N.W.2d 391 (1984).

¶ 10. LaCount asserts the warrant authorized the search for and seizure of records relating only to GP&L business with clients specifically named in the probable cause for the warrant and also did not allow police to search his office within GP&L's offices. "[I]n cases involving [an alleged] complex scheme to defraud, a criminal investigation may require piecing together, like a jigsaw puzzle, a number of bits of evidence which if taken alone might show comparatively little." *State v. DeSmidt*, 155 Wis. 2d 119, 133, 454 N.W.2d 780 (1990); *see also Andersen v. Maryland*, 427 U.S. 463, 480–81 n.10 (1976). Thus, "[w]here there is probable cause to

believe that there exists a pervasive scheme to defraud, all the records of a business may be seized." *DeSmidt*, 155 Wis. 2d at 133–34.

¶ 11. When read as a whole, the search warrant authorizes the search for and seizure of more than just the records of those clients specified in the warrant's application, and includes searching LaCount's office within GP&L. The search warrant's first five paragraphs allow for the search for and seizure of paper records and computer records. In particular, the warrant allowed police to search and seize (1) any type of bank account or investment account owned by GP&L, (2) any type of bank account or investment account owned by Louis LaCount, (3) records relating to payroll, accounts payable, telephone logs or accounts receivable of GP&L, and (4) records indicating the names of past and present employees of GP&L or past and present owners or shareholders in GP&L.

¶ 12. The evidence used by the State to convict LaCount came within the warrant's scope and LaCount does not challenge the constitutionality of the warrant itself. The State introduced evidence at the preliminary hearing and at trial consistent with the terms of the warrant in order to convict LaCount. Specifically, regarding the theft from Mirr Tree, the State introduced eight exhibits at the preliminary hearing. Those exhibits included the following:

1. An agreement dated March 23, 1999, in which Mirr Tree paid GP&L to "take over the finances of Mirr Tree Service;"

2. A $6,000 check from Mirr Tree to GP&L as part of the retainer;

3. A "Settlement Authorization" and "Limited Power of Attorney" between Mirr Tree and GP&L;

481

4. An "accounts receivable" document showing client checks that Philip Mirr delivered to GP&L;

5. A list of Mirr Tree Service creditors in 1999; and

6. A document titled "Deposits of Mirr Tree Service into GP&L Union State Bank Account" for paying Mirr Clients.

Regarding the securities fraud charge, the State's evidence at trial included:

1. A "mortgage assignment" document in the name of GP&L for property in Fond du Lac County, which LaCount said he gave to John Wills as "collateral" for Wills' investment in LaCount's purported endeavor to buy and develop the Northland Turkey property;

2. A computer printout of April 5, 1999, summarizing GP&L bank deposits made by bookkeeper Mary Verboomen at LaCount's direction, including wire transfers of $24,000 and $15,000 from John Wills to GP&L;

3. Computer printouts of GP&L "reconciliation statements" for the firm's checking account, prepared by bookkeeper Verboomen for March and April 1999; and

4. Union State Bank checking account statements for GP&L for March and April 1999, showing wired deposits of $25,000, $24,000 and $15,000 into the GP&L account from CPR.

¶ 13. LaCount also maintains the search warrant did not authorize police to search his office. As we noted previously the search warrant allowed police to search GP&L's offices, of which LaCount's office was a part. Thus, the search of his office within GP&L's offices was within the scope of the warrant.

## II. *The Expert Testimony Regarding the Nature of Investment Contracts Was Properly Admitted.*

■

¶ 14. LaCount argues the court erred by admitting attorney David Cohen's expert testimony regarding what constitutes an investment contract. Whether to admit expert testimony rests within the discretion of the trial court. *See State v. Blair*, 164 Wis. 2d 64, 74, 473 N.W.2d 566 (Ct. App. 1991). We must affirm if the discretion is exercised in accordance with the relevant law and facts, and we will "search the record for reasons to sustain" that discretion. *State v. Thiel*, 2004 WI App 225, ¶ 26, 277 Wis. 2d 698, 691 N.W.2d 388.

■

¶ 15. WISCONSIN STAT. § 907.02[1] governs the admissibility of expert testimony. Expert testimony is admissible if: "(1) it is relevant . . .; (2) the witness is qualified as an expert . . .; and (3) the evidence will assist the trier of fact in determining an issue of fact . . . ." *State v. Peters*, 192 Wis. 2d 674, 687–88, 534 N.W.2d 867 (Ct. App. 1995). LaCount claims the testimony created two errors. First, he argues the testimony was impermissible because the expert testified as to the legal definition of an investment contract. Second, he contends the testimony was improper because the expert made a conclusion as to an ultimate fact. He relies on the general rule that "no witness may testify as an expert on issues of domestic law," which is the province of the court. *See State v. McDowell*, 2003 WI App 168, ¶ 62 n.20, 266 Wis. 2d 599, 669 N.W.2d 204.

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

¶ 16. We agree Cohen could not provide a legal definition of investment contract in his testimony. However, we do not need to resolve whether Cohen's testimony should have been admitted because LaCount has not established how he was prejudiced by it. Cohen's description of investment contracts matched the definition set forth in the jury instruction. Specifically, an investment contract is "[a]ny investment in a common enterprise with the expectation of profit to be derived through the essential managerial efforts of someone other than the investor." Wis. Admin. Code § DFI-Sec 1.02(6)(a) (Dec. 2004); *see also Fore Way Express, Inc. v. Bast*, 178 Wis. 2d 693, 712, 505 N.W.2d 408 (Ct. App. 1993).

¶ 17. LaCount also contends the court should not have admitted Cohen's comments referring to investment contracts as "a very, very broad category," which "basically covers everything . . . you can't figure out." However, the jurors were instructed that they were not bound by an expert's opinion, that they were the sole judges of facts, and that the court is the judge of the law. Jurors are presumed to follow all instructions given. *State v. Grande*, 169 Wis. 2d 422, 436, 485 N.W.2d 282 (Ct. App. 1992). We conclude that even if Cohen impermissibly testified regarding state law or was overbroad in his definition, LaCount has not established how that testimony prejudiced him, as the court properly instructed the jury on what constitutes an investment contract.

¶ 18. Additionally, Cohen's testimony did not usurp the role of the jury. Wisconsin Stat. § 907.02 sets "a fairly low threshold for the admissibility of opinion

evidence that is beyond the presumed ken of ordinary jurors." *Anderson v. Combustion Eng'r, Inc.*, 2002 WI App 143, ¶ 4, 256 Wis. 2d 389, 647 N.W.2d 460. LaCount argues Cohen's testimony was impermissible because he affirmatively answered a prosecutor's question as to whether an investment contract was present. We disagree because Cohen's answer was in direct response to a hypothetical question.

¶ 19. Under Wis. Stat. § 907.04, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." *See, e.g., State v. Elm*, 201 Wis. 2d 452, 459, 549 N.W.2d 471 (Ct. App. 1996). An expert opinion on an ultimate fact is permissible in situations "[w]here evidentiary facts, upon which the fact in issue depends, are in dispute, opinion evidence as to the ultimate fact must be given upon a hypothetical case." *Rabata v. Dohner*, 45 Wis. 2d 111, 123–24, 172 N.W.2d 409 (1969) (citation omitted).

¶ 20. Here, Cohen testified he reviewed Wills' statements, some testimony, bank records and court files, and the supposed mortgage assignment, which are the types of documents Cohen typically examines to determine whether an investment contract exists. The prosecutor then asked Cohen the following question: "[A]re the things that you learned about this Wills-LaCount transaction consistent with an investment contract?" Cohen responded affirmatively.

¶ 21. LaCount's attorney made sure jurors understood Cohen was merely assuming facts in giving his opinion. Specifically, on cross-examination, Cohen admitted he never spoke to Wills and could not say if Wills was telling the truth about what occurred. Cohen acknowledged that his opinion was based "on the as-

sumption that the information given to [him] is accurate," but that information could very well be "garbage." Therefore, Cohen was properly allowed to testify as to the basic factual characteristics of an investment contract.

*III. Sufficient Evidence was produced to enable the jury to find LaCount guilty of Securities Fraud.*

■

¶ 22. LaCount next argues insufficient evidence was produced at trial to convict him of the securities fraud because there was no investment contract. To determine the sufficiency of the evidence to support a conviction, we consider all of the evidence produced at trial, including evidence that the defendant challenges as being improperly admitted. *See State v. Smith*, 2004 WI App 116, ¶ 32, 275 Wis. 2d 204, 685 N.W.2d 821, *rev'd on other grounds*, 2005 WI 104, 283 Wis. 2d 57, 699 N.W.2d 508; *see also Lockhart v. Nelson*, 488 U.S. 33, 41 (1988).

¶ 23. Under WIS. STAT. § 551.41(2), the State had to prove three elements beyond a reasonable doubt to convict LaCount of securities fraud. First, the State had to prove LaCount sold Wills a security, in this case, an investment contract. Second, the State had to prove LaCount made an "untrue statement of a material fact or [omitted] to state a material fact necessary in order to make the statements made . . . not misleading in connection with the offer, sale or purchase of any security in this state . . . ." *Id.* Finally, the State had to prove LaCount "acted willfully." LaCount only argues the State failed to prove LaCount sold Wills an investment contract. Therefore, we limit our consideration only to the first element.

¶ 24. The court defined an investment contract for jurors as follows:

> An investment contract is any investment in a common enterprise with the expectation of profit to be delivered through the essential managerial efforts of someone other than the investor. A "common enterprise" means an enterprise in which the fortunes of the investor are tied to the effectives of the efforts of those seeking the investment of a third party. If an investor uses his own efforts to achieve a profit, rather than relying on the efforts of a promoter or third party, the investment does not constitute a security.

LaCount argues the State failed to prove beyond a reasonable doubt that Wills depended solely upon LaCount's efforts to realize a profit, relying on the United States Supreme Court's definition of investment contract under federal statutes. *See SEC v. Edwards*, 540 U.S. 389, 393 (2004).

¶ 25. However, the meaning of investment contract is not as narrow as LaCount maintains. Numerous courts, including Wisconsin courts, have held that the efforts do not need to come solely from the efforts of another. Wisconsin has adopted a broad definition of investment contract which simply requires "the essential managerial efforts of someone other than the investor." *Fore Way Express*, 178 Wis. 2d at 712. Here, the jury was instructed according to Wisconsin law.

¶ 26. While Wills' testimony could be read to say Wills have might played a role in the investment, it is not enough to establish a jury could not find there was an investment contract because Wills could still be relying predominantly on the efforts of LaCount. Therefore, we conclude a jury could reasonably find,

based on the evidence produced, that LaCount sold Wills an investment contract.

## IV. The Court's Finding that LaCount Was a Habitual Criminal as to Securities Fraud Did Not Violate LaCount's Right to a Jury Trial.

¶ 27. LaCount argues the court erred by not submitting the question of whether LaCount had been convicted of a crime in the last five years to the jury before sentencing him as a habitual criminal, thereby denying him his right to a jury trial. Whether LaCount was denied his constitutional right to a jury trial is a question of constitutional fact that we review de novo. *See State v. Cloud*, 133 Wis. 2d 58, 61, 393 N.W.2d 123 (Ct. App. 1986).

¶ 28. A convicted defendant is subject to repeater enhancement if that defendant "was convicted of a felony during the 5–year period immediately preceding the commission of the crime for which [he or she] presently is being sentenced . . . ." Wis. Stat. § 939.62(2).[2] In computing this five-year period, "time which the [defendant] spent in actual confinement serving a criminal sentence shall be excluded." *Id.*

[2] Wisconsin Stat. § 939.62(2) reads as follows:

The actor is a repeater if the actor was convicted of a felony during the 5–year period immediately preceding the commission of the crime for which the actor presently is being sentenced, or if the actor was convicted of a misdemeanor on 3 separate occasions during that same period, which convictions remain of record and unreversed. It is immaterial that sentence was stayed, withheld or suspended, or that the actor was pardoned, unless such pardon was granted on the ground of innocence. In computing the preceding 5–year period, time which the actor spent in actual confinement serving a criminal sentence shall be excluded.

Relying on *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), LaCount concludes the issue of whether he had been convicted of a felony during the five-year period immediately preceding the crimes for which he was sentenced should have gone to the jury. *See also State v. Saunders*, 2002 WI 107, ¶ 44, 255 Wis. 2d 589, 649 N.W.2d 263. More specifically, he reasons it was a question of fact for the jury to determine whether the five-year time period was tolled by time served in actual confinement.

¶ 29. *Apprendi* requires any fact other than the fact of a conviction which enhances a penalty beyond the prescribed statutory maximum to be submitted to the jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490. However, the Supreme Court in *Shepard v. United States*, 544 U.S. 13 (2005), appears to have relaxed *Apprendi*'s holding. In *Shepard*, the Supreme Court held:

> [T]o determine whether a [prior] plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense [to be used for sentence enhancement] is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.

*Id.* at 26. We agree with the State that when read together, *Shepard* and *Apprendi* suggest that a court, rather than a jury, may determine the applicability of a prior conviction for sentence enhancement where the applicability of the prior conviction is readily determined on the existing judicial record. *Id.*

¶ 30. Here, for repeater enhancement purposes, the State relied on LaCount's prior felony convictions of November 12, 1993, a certified copy of which was introduced at trial. Regardless of the precise sentence that LaCount received, the earliest he would have been eligible for release from confinement on discretionary parole had to be at least "6 months" thereafter under WIS. STAT. § 304.06(1)(b) (1993–94).[3] Six months after November 12, 1993, would be May 12, 1994.

¶ 31. Because LaCount's securities fraud conviction was based on conduct that occurred in March and April of 1999, the existing judicial record on its face shows that even if LaCount had been released on parole on May 12, 1994, and never returned to prison, he would have committed securities fraud within five years of such release. Thus, the court properly enhanced LaCount's punishment based on the existing judicial record and applicable statutes, and did not need to submit those issues to the jury.

*By the Court.*—Judgments affirmed.

---

[3] WISCONSIN STAT. § 304.06(1)(b) (1993–94) reads in relevant part as follows:

> Except as provided in sub. (1m) or s. 161.49(2), 302.045(3), 302.05(3)(b), or 973.0135, the parole commission may parole an inmate of the Wisconsin state prisons or any felon or any person serving at least one year or more in a county house of correction or a county reforestation camp organized under s. 303.07, when he or she has served 25 of the sentence imposed for the offense, or 6 months, whichever is greater.