STATE of Wisconsin, Plaintiff-Respondent,

v.

GOING PLACES TRAVEL CORPORATION, Perry T. Ruiz and Lisa Ann Ruiz, Defendants,

CASTAWAYS VACATIONS, INC., William Bailey, Christy Spensberger and Travel Services, Inc., Defendants-Appellants.

Court of Appeals

*Nos. 2014AP1859, 2014AP1860, 2014AP1861, 2014AP1862.*
*Submitted on briefs February 17, 2015.*
*—Decided April 14, 2015.*

2015 WI App 42

(Also reported in 864 N.W.2d 885.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Steven M. Biskupic*, *Michelle L. Jacobs* and *Vanessa K. Eisenmann* of *Biskupic & Jacobs, S.C.*, Mequon.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general and *Anthony D. Russomanno*, assistant attorney general.

Before Hoover, P.J., Stark and Blanchard, JJ.

¶ 1. STARK, J.   A jury found that Castaways Vacations, Inc., William Bailey, Christy Spensberger, and Travel Services, Inc. (collectively, Travel Services)

made multiple misrepresentations and failed to disclose required information when selling travel club memberships to Wisconsin residents, in violation of two state statutes and one administrative code provision. The circuit court entered a judgment requiring Travel Services to pay $3,803,562 in restitution and $841,599.50 in forfeitures.

¶ 2. Travel Services now appeals, challenging the amount of restitution and forfeitures. It argues: (1) the circuit court improperly shifted the burden of proof to Travel Services with respect to the amount of restitution; (2) the court erred by excluding a report prepared by Travel Services' expert witness regarding the amount of restitution; (3) the court improperly counted the number of violations for purposes of calculating the forfeitures; and (4) the judgment violated Travel Services' right to due process. We reject these arguments and affirm the judgment, as well as an order denying Travel Services' motion for reconsideration.

## BACKGROUND

¶ 3. The State filed this forfeiture action against Travel Services, Going Places Travel Corporation, Perry Ruiz, and Lisa Ruiz on February 19, 2010. As relevant to this appeal, the complaint alleged the various defendants violated the following statutory and administrative code provisions: Wis. Stat. § 100.171, which governs prize notices; Wis. Stat. § 100.18, which prohibits any person, firm, or corporation from making an untrue, deceptive, or misleading statement or representation with the intent to sell or induce the sale of any product or service; and Wis. Admin. Code § ATCP 127.44(15), which prohibits a

421

seller from making any false, deceptive or misleading representation to a consumer in a mail transaction.[1]

¶ 4.  At trial, evidence was introduced that Travel Services operated various travel clubs. In exchange for a membership fee, members in the clubs were supposed to receive exclusive discounts on travel. Travel Services relied on distributors to sell memberships in its clubs. Going Places, operated by Perry Ruiz, acted as a distributor for Travel Services in Wisconsin. Going Places sold memberships in Travel Services' "Phoenix Vacation Club" and "Castaways Vacation Club."

¶ 5.  Going Places used pressured sales presentations to sell memberships in Travel Services' clubs. To promote these presentations, Going Places sent postcards to Wisconsin residents at their homes, promising free trips and prize vouchers. The postcards were addressed to the recipients by name and were mailed in batches of 5,000 to 10,000 per week for two and one-half years.

¶ 6.  At the sales presentations, customers were promised substantial discounts on travel. As relevant here, customers were shown posters, created by Travel Services, which promised discounts of up to 65% off hotel costs and 75% off condominium rentals. Customers also received written club bylaws, prepared by Travel Services. The bylaws promised various discounts to members, including up to 75% off condominium rentals, 50% off cruises, and 65% off hotel costs. The bylaws also represented that the travel clubs were located in Indiana, Kentucky, and Texas. In addition, the bylaws represented that each club was

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version. All references to WIS. ADMIN. CODE ch. ATCP 127 are to the December 2013 version.

"an independently owned and operated travel club offering travel services for use exclusively by eligible Club members only."

¶ 7.   Consumers typically paid between $3,000 and $4,000 to join Travel Services' clubs. Thereafter, a yearly fee of $199 was required to maintain a club membership. To access the club's promised discounts on travel amenities, a member would use the club's website or phone number. Both were operated by Travel Services, which was located in Illinois. The addresses listed on the clubs' bylaws were actually UPS mail boxes. Mail sent to those addresses was forwarded to Travel Services in Illinois.

¶ 8.   At trial, the State presented testimony from eleven Wisconsin residents who purchased memberships in Travel Services' clubs. Some of these witnesses testified to receiving postcards or phone calls promising prize vouchers. However, the witnesses testified the vouchers were essentially worthless because they did not work, involved paying out money, or had so many restrictions as to be unusable. Ruiz confirmed in his trial testimony that very few prize vouchers ever culminated in the consumer receiving the promised prize.

¶ 9.   The State's consumer witnesses also testified they were promised substantial discounts on travel at the sales presentations they attended. However, after joining Travel Services' clubs, they found they could get the same, or better, deals simply by going online themselves or calling the destination or hotel directly. Conversely, Travel Services presented one witness who testified he was satisfied with his club membership and greatly valued the club's services. Other evidence at trial showed that, within four years

of purchase, approximately 80% of club members stopped paying the yearly fees required to maintain their memberships.

¶ 10. In all, Going Places sold 884 memberships in Travel Services' clubs to Wisconsin residents. The parties stipulated that 884 copies of the clubs' bylaws were provided to Wisconsin consumers. The parties also stipulated that Wisconsin government entities had received 114 complaints about Travel Services' clubs.

¶ 11. A unanimous jury found that Travel Services' bylaws misrepresented the locations of the travel clubs, the exclusivity of member benefits, and the discounts available to club members. The jury also found that the posters used during the sales presentations misrepresented the available discounts. The jury further found that Going Places, acting as an agent of Travel Services, mailed more than 460,000 postcards to Wisconsin consumers, each of which omitted one or more of the disclosures required by WIS. STAT. § 100.171.

¶ 12. The State subsequently moved for judgment, arguing the jury's verdict established that Travel Services violated WIS. STAT. §§ 100.171, 100.18, and WIS. ADMIN. CODE § ATCP 127.44(15). The State requested $3,803,562 in restitution, calculated by multiplying the average cost of an initial club membership ($3,424) by the number of Wisconsin residents who purchased memberships (884), then adding the average annual fees those members paid ($828,437), and subtracting rebates and refunds ($51,691).

¶ 13. The State also sought forfeitures for Travel Services' violations of WIS. STAT. § 100.171 and WIS. ADMIN. CODE § ATCP 127.44(15). The State argued the jury's verdict established 460,000 violations of WIS.

STAT. § 100.171—one for each postcard sent to a Wisconsin resident. However, "to temper the size of the forfeiture[,]" the State asked the court to enter a judgment finding only 2,000 violations of § 100.171. Although the State could have requested a forfeiture of up to $5,000 per violation, *see* § 100.171(7)(a), the State requested the minimum $100 forfeiture for each violation, resulting in a total of $200,000.

¶ 14. With respect to WIS. ADMIN. CODE § ATCP 127.44(15), the State argued Travel Services violated that provision 3,536 times, calculated by multiplying the number of misrepresentations in the bylaws and posters (4) by the number of Wisconsin residents who purchased travel club memberships (884). Although the State could have requested a forfeiture of up to $10,000 per violation, *see* WIS. STAT. § 100.26(6), the State requested the minimum $100 forfeiture for each violation, resulting in a total of $353,600.

¶ 15. Travel Services opposed the State's motion for judgment, arguing the State had failed to establish that each Wisconsin consumer who purchased a membership in one of Travel Services' clubs suffered a net pecuniary loss due to Travel Services' conduct. In support of this argument, Travel Services submitted an expert report from economics professor Charles Breeden, who opined that the State's proposal for calculating restitution "fail[ed] to meet the commonly cited standard of a reasonable degree of professional certainty due to . . . its complete failure to deduct the value of travel services that were provided to members and thus do not constitute pecuniary losses to them[.]" Travel Services also challenged the forfeitures the State requested, arguing the number of violations

should be much smaller because the individual post-cards and misrepresentations did not constitute separate violations.

¶ 16.   The circuit court held a hearing on the State's motion for judgment on June 2, 2014. During the hearing, the court granted the State's motion to exclude Breeden's report, concluding it was irrelevant and would not assist the court in making its decision. After hearing argument from both sides, the court ordered restitution and forfeitures in the amounts requested by the State. Following the addition of statutorily mandated surcharges, the total amount of the forfeitures came to $841,599.50.

¶ 17.   Travel Services moved for reconsideration, arguing the judgment violated its right to due process. The circuit court denied Travel Services' motion after a hearing. This appeal follows.

## DISCUSSION

### I. Restitution

¶ 18.   The circuit court had authority to impose restitution in this case under three statutory provisions. WISCONSIN STAT. § 100.18(11)(d) provides that, when the State establishes a violation of § 100.18, "[t]he court may in its discretion, prior to entry of final judgment make such orders or judgments as may be necessary to restore to any person any pecuniary loss suffered because of the acts or practices involved in the action, provided proof thereof is submitted to the satisfaction of the court." WISCONSIN STAT. § 100.20(6), which applies to violations of WIS. ADMIN. CODE § ATCP 127.44(15), contains identical language. Finally, WIS. STAT. § 100.171(8)(a) provides that, upon entry of a final

judgment, a court "may award restitution when appropriate to any person suffering loss because of a violation of this section if proof of such loss is submitted to the satisfaction of the court."

■

¶ 19.  Travel Services does not challenge the circuit court's authority to award restitution. Instead, relying on *Tim Torres Enterprises, Inc. v. Linscott*, 142 Wis. 2d 56, 416 N.W.2d 670 (Ct. App. 1987), Travel Services argues the court erred as a matter of law by improperly shifting the burden of proof to Travel Services regarding the amount of restitution. In *Tim Torres*, both the plaintiff and the defendant had licensing agreements allowing them to sell frozen custard using the Gilles Frozen Custard trademark. *Id.* at 60–61. Although the defendant was aware of the plaintiff's right to sell Gilles custard, he displayed signs stating that it was sold only at his establishment. *Id.* at 62–63. A jury found that these statements were untrue, deceptive, or misleading, contrary to Wis. Stat. § 100.18, and it awarded the plaintiff $18,000 for pecuniary loss. *Id.* at 63.

¶ 20.  On appeal, we upheld the jury's finding that the defendant's statements were untrue. *Id.* at 69. We also concluded the plaintiff presented sufficient evidence to support the pecuniary loss award. *Id.* at 75. We observed that the plaintiff testified regarding his lost profits and presented expert witness testimony on the issue, and the defendant did not offer any contrary expert testimony. *Id.* at 71. We also noted that the purpose of Wis. Stat. § 100.18 is to "prevent certain activities deemed harmful to citizens' economic and social well-being." *Tim Torres*, 142 Wis. 2d at 72. Accordingly,

[e]ven though the damages from these illegal activities may not be easy to quantify and prove, this does not mean that there should be no recovery. The broad remedial scope of sec. 100.18 and its protective purpose make it similar to the remedial provision of the federal antitrust laws in that to eliminate or rectify a wrong the traditional standards of proof may be relaxed if necessary.

*Id.*

¶ 21. Travel Services asserts the *Tim Torres* court "nowhere indicated that the burden of proof may shift to the defendant." The problem with Travel Services' argument, though, is that the circuit court in this case did not shift the burden of proof to Travel Services. Relying on federal cases, the State argued in the circuit court that shifting the burden of proof to Travel Services would be appropriate. However, the circuit court did not explicitly rely on or adopt that position.

¶ 22. Instead, in its oral ruling, the court concluded the record as a whole contained sufficient proof that "every purchaser [of a club membership] suffered a pecuniary loss." The court further found that the evidence showed the actual value of the pecuniary loss was "the consumers' money expended, less any rebates or refunds." The court then explained that the State's proposed pecuniary loss figure was "appropriate here to the satisfaction of the Court." The court acknowledged Travel Services' argument that the State's figure was inaccurate because it did not take into account the economic value some members may have derived from their memberships. However, the court rejected that argument, noting that Travel Services "offer[ed] no evidence regarding the total value of the travel booking. They offer[ed] only generalized assertions to the effect that club members derived economic value from

428

having someone available to search for and book travel." Nevertheless, the court directed the State to hold the restitution paid by Travel Services in trust for two years and to "determine the exact amount owed to each consumer based on their costs less recoupments." After two years, the State would be required to return any amount remaining to Travel Services.

¶ 23. This method of awarding restitution was consistent with *Tim Torres*. To summarize, the circuit court found that the evidence presented by the State was sufficient to support its proposed pecuniary loss figure. The court then explained why it was not convinced by the contrary evidence presented by Travel Services. Rather than shifting the burden of proof to Travel Services, the court simply concluded that the record as a whole supported the State's figure. We therefore reject Travel Services' argument that the circuit court erred as a matter of law by shifting the burden of proof to Travel Services.

██

¶ 24. In the absence of a burden shift, the real issue is whether the evidence was sufficient to support the court's exercise of discretion in setting the amount of restitution. Under the statutes at issue in this case, a circuit court's decision to award a particular amount of restitution is discretionary. *see* Wis. Stat. §§ 100.18(11)(d), 100.20(6), 100.171(8). A circuit court properly exercises its discretion when it applies a proper standard of law, examines the relevant facts, and, using a demonstrated rational process, reaches a conclusion a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982). In addition, we will not set aside the circuit court's factual findings unless they are clearly erroneous. Wis. Stat. § 805.17(2). Moreover, when reviewing a

damages award, we view the evidence in the light most favorable to the respondent. *See, e.g., Fahrenberg v. Tengel*, 96 Wis. 2d 211, 231, 291 N.W.2d 516 (1980).

■

¶ 25. Here, the evidence presented at trial sufficiently supported the circuit court's restitution award. The State's consumer witnesses testified they were induced to join Travel Services' clubs by promises of substantial discounts on travel. However, after purchasing club memberships, these witnesses learned the promised discounts did not exist. This evidence supports an inference that, like the eleven consumers who testified, all 884 consumers who purchased memberships in Travel Services' clubs suffered pecuniary losses because they paid membership fees to obtain access to discounts that did not exist. As the circuit court stated in its oral ruling, "The evidence in this case demonstrates to the satisfaction of the Court that it was impossible to get the kind of bargains they, the consumers, were led to believe they would get. Therefore, every purchaser suffered a pecuniary loss."

¶ 26. Regarding the amount of pecuniary losses suffered, Travel Services does not specifically dispute any of the numbers the State used to calculate its proposed pecuniary loss figure of $3,803,562. Nor does Travel Services present an alternative proposal as to how restitution should be calculated. Instead, Travel Services highlights evidence suggesting that some members of Travel Services' clubs were satisfied with their memberships. For instance, Travel Services notes that one witness at trial testified he greatly valued his travel club membership. Travel Services also observes that a survey conducted by the State, the results of which were not introduced into evidence at trial, showed that 301 of the 361 survey respondents had

used their travel club memberships, 50 remained active members, and several reported full satisfaction with the clubs' services. Travel Services argues this evidence shows that at least some club members received economic benefits as a result of their memberships. Accordingly, Travel Services argues the State failed to prove that all 884 club members were entitled to full refunds.

¶ 27.   We reject this argument for two reasons. First, while Travel Services points to evidence arguably supporting a lower restitution award, "[w]hen the circuit court sits as factfinder, it is the ultimate arbiter of the weight and credibility afforded to the evidence." *Bonstores Realty One, LLC v. City of Wauwatosa*, 2013 WI App 131, ¶ 33, 351 Wis. 2d 439, 839 N.W.2d 893. The circuit court was not required to credit Travel Services' evidence of customer satisfaction.

¶ 28.   Second, the logical extension of Travel Services' argument is that, in order to adequately prove the amount of pecuniary loss Travel Services' customers sustained, the State would have to determine the precise value of any economic benefits each of the 884 club members received, and then subtract those amounts from the costs of membership. However, this would be virtually impossible to accomplish and would be inconsistent with the relaxed standard of proof set forth in *Tim Torres*. The *Tim Torres* court recognized that, although damages caused by a violation of Wis. Stat. § 100.18 may be difficult to quantify and prove, "this does not mean that there should be no recovery." *Tim Torres*, 142 Wis. 2d at 72. It reasoned that allowing a relaxed standard of proof for damages was consistent with the "broad remedial scope" of § 100.18. *Tim Torres*, 142 Wis. 2d at 72.

¶ 29. We agree with the State that, under *Tim Torres*, pecuniary loss may be proven "by reasonable evidence of harm, as opposed to precise figures in all respects." Here, the State presented reasonable evidence of the pecuniary losses caused by Travel Services' conduct. Although Travel Services presented some contrary evidence, the circuit court was not required to credit that evidence or to give it significant weight. Further, the court correctly noted that Travel Services failed to introduce any specific evidence about the value of economic benefits provided to Travel Services' members. On this record, sufficient evidence supported the court's decision to adopt the restitution figure proposed by the State, and doing so was not an erroneous exercise of discretion. In addition, while not strictly related to the sufficiency of the evidence, we also note that, given the method of distributing restitution ordered by the circuit court, Travel Services will be credited for "recoupments" received by consumers. This effectively alleviates Travel Services' concerns about the amount of the restitution award.

¶ 30. Finally, although we do not adopt the federal burden-shifting analysis that the State advocated in the circuit court, we do agree with the State that that approach appears to be consistent with Wisconsin law. The federal cases the State cited hold that, in cases involving deceptive and misleading sales practices that violate the Federal Trade Commission Act, the Federal Trade Commission "must show that its calculations reasonably approximated the amount of customers' net losses, and then the burden shifts to the defendants to show that those figures were inaccurate." *See, e.g., Federal Trade Comm'n v. Febre*, 128 F.3d 530, 535 (7th Cir. 1997). As

a practical matter, this is similar to the approach set forth in *Tim Torres*. Under *Tim Torres*, the State must present reasonable evidence of pecuniary loss. The defendant is free to present contrary evidence, but unless the factfinder is convinced by the defendant's evidence, the State will prevail. Thus, although we do not adopt the federal burden-shifting approach, we note that it appears consistent with Wisconsin law, and it therefore further supports our conclusion that the circuit court did not erroneously exercise its discretion in awarding the amount of restitution requested by the State.

## II. Expert witness report

¶ 31. Travel Services next argues the circuit court erred by excluding Breeden's report. We will not disturb a circuit court's decision to exclude evidence unless the court erroneously exercised its discretion. *Weborg v. Jenny*, 2012 WI 67, ¶ 41, 341 Wis. 2d 668, 816 N.W.2d 191. Our review is highly deferential. *State v. Shomberg*, 2006 WI 9, ¶ 11, 288 Wis. 2d 1, 709 N.W.2d 370. " 'The test is not whether this court agrees with the ruling of the [circuit] court, but whether appropriate discretion was in fact exercised.' " *Id.* (quoted source omitted).

¶ 32. Although Wisconsin has adopted the federal *Daubert*[2] standard for admissibility of expert testimony, that standard first applies to actions commenced on February 1, 2011. *See State v. Alger*, 2015

---

[2] *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

WI 3, ¶ 2, 360 Wis. 2d 193, 858 N.W.2d 346. It is undisputed that this action was commenced in 2010. Accordingly, we agree with Travel Services that the admissibility of Breeden's report must be analyzed using the pre-*Daubert* standard. Under that standard, expert testimony is admissible if: (1) it is relevant; (2) the witness is qualified as an expert; and (3) the evidence will assist the trier of fact in determining an issue of fact. *State v. LaCount*, 2007 WI App 116, ¶ 15, 301 Wis. 2d 472, 732 N.W.2d 29.

¶ 33. The circuit court determined Breeden's report was not relevant. We conclude the court appropriately exercised its discretion in reaching that conclusion. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Wis. Stat. § 904.01. As the circuit court noted, aside from offering a general opinion that the State's proposed restitution should be reduced by the value of travel services provided to club members, Breeden did not offer any specific figures or "offer any evidence that he had related . . . his opinions to the facts of the case here specifically[.]" Further, even if Breeden's general opinion had been accepted by the court, Travel Services failed to provide any evidence supporting the value of those services provided to club members for the court to calculate the offset. The court could therefore reasonably conclude Breeden's report would not help the factfinder resolve the pertinent issue of fact—namely, the proper amount of restitution.

¶ 34. Moreover, even if the circuit court erred by excluding Breeden's report, we agree with the State that any error was harmless. *see State v. Keith*, 216 Wis. 2d 61, 75, 573 N.W.2d 888 (Ct. App. 1997) ("Evidentiary errors are subject to a harmless error analysis."). Unlike cases involving juries, in which the circuit court's exclusion of evidence shields the evidence from the factfinder's view, the circuit court here reviewed Breeden's report before deciding whether to admit it. In so doing, the court concluded the report was not relevant because it did not offer specific figures and Breeden failed to tailor his general opinions to the facts of the case. Based on the circuit court's comments, it is clear that, had the court admitted Breeden's report, it would have given the report little or no weight, which would be its right as factfinder. *see Bloomer Housing Ltd. P'Ship v. City of Bloomer*, 2002 WI App 252, ¶ 12, 257 Wis. 2d 883, 653 N.W.2d 309 (The weight given to expert witness opinions is uniquely within the province of the factfinder.). Thus, remanding for the circuit court to admit and consider Breeden's report would serve no purpose. Under the circumstances, there was no practical difference between excluding the report as irrelevant and admitting the report but giving it no weight.

## III. Number of violations

[12, 13]

¶ 35. Travel Services next challenges the forfeitures awarded by the circuit court, arguing the court improperly determined the number of violations Travel Services committed. "A trial court has a wide range of discretion in fixing the amounts of forfei-

tures . . . based on the facts of the individual case." *State v. C. Spielvogel & Sons Excavating, Inc.*, 193 Wis. 2d 464, 478, 535 N.W.2d 28 (Ct. App. 1995). However, when the court's exercise of discretion turns on a question of law, we review the legal issue independently. *See Olson v. Farrar*, 2012 WI 3, ¶ 24, 338 Wis. 2d 215, 809 N.W.2d 1. Determining the number of violations Travel Services committed requires us to interpret the term "violation," as it is used in the relevant statutes. Statutory interpretation presents a question of law that we review independently. *Domino v. Walworth Cnty.*, 118 Wis. 2d 488, 493, 347 N.W.2d 917 (Ct. App. 1984).

¶ 36.   When interpreting a statute, our objective "is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. Our analysis begins with the plain language of the statute. *Id.*, ¶ 45. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* In addition, statutory language must be interpreted "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. " 'If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning.' " *Id.* (quoted source omitted).

## A. WISCONSIN STAT. § 100.171

¶ 37.    The jury found that Going Places, acting as Travel Services' agent, mailed over 460,000 postcards to Wisconsin residents that lacked disclosures required by WIS. STAT. § 100.171(3)(a). In the circuit court, the State argued each of the 460,000 postcards constituted a violation of § 100.171, but it nevertheless requested forfeitures for only 2,000 violations. The circuit court agreed with the State that each postcard was a separate violation.

¶ 38.    We agree with the State and the circuit court, based on the plain language of WIS. STAT. § 100.171. Section 100.171 regulates prize notices, requiring them to contain certain disclosures. *see* § 100.171(3)(a). Section 100.171(7)(a), in turn, provides, "Whoever violates this section may be required to forfeit not less than $100 nor more than $5,000 for each violation." The statute does not define the term "violation." However, other language in the statute makes it clear that the statute regulates conduct directed at individuals. For instance, the term "prize notice" is defined, in relevant part, as a notice "*given to an individual* in this state[.]" Sec. 100.171(1)(b)1. (emphasis added). The statute defines the term "solicitor" as "a person who represents *to an individual* that *the individual* has been selected or may be eligible to receive a prize." Sec. 100.171(1)(c) (emphasis added). The statute further states, "If a solicitor represents *to an individual* that *the individual* has been selected or may be eligible to receive a prize, the solicitor may not request . . . a payment *from the individual* in any form before *the individual* receives a written prize notice" containing certain information presented in a certain

437

manner. Sec. 100.171(2) (emphasis added). Finally, the statute provides that a "person" suffering a pecuniary loss due to a violation of the statute may bring a private action against the violator. Sec. 100.171(9).

¶ 39. These provisions show that the purpose of WIS. STAT. § 100.171 is to regulate certain conduct targeted at individuals. Thus, the only reasonable interpretation of the term "violation," as used in § 100.171(7)(a), is that each failure to provide an *individual* with the information required by § 100.171(3)(a) constitutes a separate violation of the statute. Here, Travel Services does not dispute the jury's finding that Going Places sent over 460,000 postcards to Wisconsin consumers, nor does it dispute the jury's finding that the postcards did not contain the required disclosures. On these facts, each postcard constituted a separate violation of § 100.171.

¶ 40. Travel Services argues our interpretation of the term "violation" is contrary to *State v. Menard, Inc.*, 121 Wis. 2d 199, 358 N.W.2d 813 (Ct. App. 1984). There, the circuit court found that Menard violated WIS. ADMIN. CODE ch. Ag. 124 (1981), by printing advertisements in several newspapers that contained prohibited price comparisons. *Menard*, 121 Wis. 2d at 201–02. The issue on appeal was the proper number of violations, for purposes of calculating forfeitures. *Id.* at 201. WISCONSIN STAT. § 100.26(6), which authorized forfeitures for violations of WIS. ADMIN. CODE ch. Ag. 124, did not define the term "violation." *Menard*, 121 Wis. 2d at 202. The circuit court deemed "each of eight distinct advertisements as one violation, regardless of the number of publications." *Id.* at 201. However, we concluded a violation occurred "each time an improper

advertisement [was] published[,]" and "[e]ach newspaper edition constitute[d] a separate publication." *Id.* at 202. We reasoned:

> Publishing the same advertisement in different newspapers requires independent acts. Similarly, running an advertisement in consecutive editions involves separate choices. Prosecuting each publication as a separate offense does not constitute multiple charges because of these independent acts.

*Id.* at 202–03.

¶ 41.   Menard argued that treating each publication as a separate violation, regardless of the newspaper's circulation size, violated its right to due process. *Id.* at 203. We disagreed, reasoning the "audience size exposed to an improper price comparison [was] not intended to define a violation under [Wis. Admin. Code] ch. Ag. 124." *Menard*, 121 Wis. 2d at 203. We observed that ch. Ag 124 defined an "advertisement" as any "oral, written or graphic representation made in connection with the solicitation of business." *Id.* We explained that this definition "indicate[d] an intention to protect the public from deceptive advertising regardless of the audience size." *Id.* Thus, defining a violation without regard to circulation size was "consistent with the objective of requiring a high degree of diligence to avoid the conduct proscribed by the regulation." *Id.*

¶ 42.   Travel Services argues *Menard* stands for the proposition that, for purposes of calculating forfeitures, it is the number of "independent acts" that matters, to use the terminology from *Menard*, rather than the size of the audience exposed to the offending

material.[3] Thus, Travel Services argues it does not matter how many postcards it mailed to Wisconsin consumers. However, the *Menard* court specifically based its holding on the language and purpose of WIS. ADMIN. CODE ch. Ag. 124. The court expressly relied on the fact that the intent of ch. Ag 124 was to protect "the public" from deceptive advertising. *Menard*, 121 Wis. 2d at 203. The *Menard* court was not confronted with a statute like WIS. STAT. § 100.171, which regulates conduct directed at individuals. We agree with the State that mailing a prize notice to an individual at his or her home is a different type of conduct than placing an advertisement in a newspaper because, as the State puts it, "the former, unlike the latter, has a much greater potential to lead to improper manipulations, as an individual is given the impression that [he or] she has a special status."

¶ 43. Further, even if *Menard* did apply in this case, we are not convinced its holding would help Travel Services. *Menard* held that a violation occurred each time the same prohibited advertisement was published in a different newspaper or in a different edition of a single newspaper because each publication was an "independent act" involving a "separate choice." *Id.* at 202–03. Here, Travel Services' agent sent 460,000 individually-addressed postcards to Wisconsin consumers. Travel Services does not explain why the preparation and mailing of each of these postcards did not constitute an independent act involving a separate choice.

¶ 44. Finally, we observe that this result appears to fulfill an obvious legislative purpose of WIS. STAT.

---

[3] Travel Services does not clarify how many "independent acts" it believes took place in this case. It simply argues each individual postcard cannot constitute a separate violation.

§ 100.171. *see Kalal*, 271 Wis. 2d 633, ¶ 49 ("A statute's purpose or scope may be readily apparent from its plain language or its relationship to surrounding or closely-related statutes—that is, from its context or the structure of the statute as a coherent whole."). This same purpose, albeit in the context of a federal statute, is concisely described in *United States v. Reader's Digest Ass'n*, 662 F.2d 955, 959–60 (3d. Cir. 1981), which addressed a scenario in which millions of direct-mail advertisements were sent to individual homes, in violation of a consent order. The defendant argued each bulk mailing, rather than each individual letter, constituted a separate violation. *Id.* at 965. The Third Circuit disagreed, holding that "each letter included as part of a mass mailing constitutes a separate violation[.]" *Id.* The court emphasized the purpose of the relevant federal statute, reasoning:

> As the Supreme Court held in [*United States v. ITT Continental Baking Co.*, 420 U.S. 223, 231 (1975)], "Congress was concerned with avoiding a situation in which the statutory penalty would be regarded by potential violators of FTC orders as nothing more than an acceptable cost of violation, rather than as a deterrence to violation." Adopting the [defendant's] position that one bulk mailing—no matter how large—comprises only one violation would eviscerate any punitive or deterrent effect of FTC penalty proceedings.

*Reader's Digest*, 662 F.3d at 966–67 (footnote and some citations omitted).

¶ 45.    The same purpose is evident in the Wisconsin statutes. Travel Services seemingly contends that its mailing of more than 460,000 postcards over two and one-half years should subject it to no greater penalty than mailing one or a few postcards on one or

441

several occasions.[4] Not only is that result inconsistent with the plain language of Wɪs. Sᴛᴀᴛ. § 100.171, it would provide no disincentive to violators against multiplying their wrongdoing. Adopting Travel Services' interpretation of the term "violation" would therefore "eviscerate any punitive or deterrent effect" of the forfeitures authorized by the statute. *see Reader's Digest*, 662 F.3d at 967.

¶ 46. For these reasons, we agree with the circuit court that each postcard constituted a separate violation of Wɪs. Sᴛᴀᴛ. § 100.171.

*B. Wɪsᴄᴏɴsɪɴ Aᴅᴍɪɴ. Cᴏᴅᴇ § ATCP 127.44(15)*

¶ 47. It is undisputed that Travel Services made four misrepresentations to consumers that violated Wɪs. Aᴅᴍɪɴ. Cᴏᴅᴇ § ATCP 127.44(15)—one misrepresentation on posters used during sales presentations, and three misrepresentations in the clubs' bylaws. It is also undisputed that 884 consumers received the bylaws and viewed the posters. The State therefore argues, and the circuit court agreed, that Travel Services committed 3,536 violations of § ATCP 127.44(15) —calculated by multiplying the number of misrepresentations by the number of consumers. Relying on *Menard*, Travel Services again argues this number is too large because each misrepresentation to each consumer was not an independent act.

¶ 48. We reject Travel Services' position, which, once again, fails to account for the language of the relevant statues and administrative code provisions.

---

[4] Again, although Travel Services argues each postcard cannot be considered a separate violation, it never explains how many violations it believes the 460,000 postcards comprised.

WISCONSIN STAT. § 100.26(6) authorizes a forfeiture "for each violation" of WIS. ADMIN. CODE § ATCP 127.44(15). The statute does not define the term "violation," but § ATCP 127.44(15) prohibits a seller from "[m]aking any false, deceptive or misleading representation *to a consumer*" in a mail transaction. (Emphasis added.) A "mail transaction" includes "[p]urchase contracts and other dealings that result from a mail solicitation." WIS. ADMIN. CODE § ATCP 127.30(3)(b).[5] A "mail solicitation," in turn, means "a written or graphic solicitation . . . that a seller delivers by mail or other means to a consumer's residence or to a consumer who is individually identified in the solicitation." Sec. ATCP 127.30(2) (emphasis added). The term "mail solicitation" does not include generally available materials like catalogs, radio or television broadcasts, internet home pages, or mass advertisements. WIS. ADMIN. CODE §§ ATCP 127.01(13) & (22), 127.30(2). Here, the circuit court concluded each misrepresentation to an individual consumer, whether contained in a poster or a bylaw provided to consumers as a result of their responses to Travel Services' mail solicitations, constituted a separate violation of § ATCP 127.44(15). This conclusion is consistent with the plain language of the regulation.

¶ 49. Moreover, as discussed above, and similar to the prize notice statute, WIS. ADMIN. CODE § ATCP 127.44(15) makes it clear that the prohibited conduct is conduct targeted at individuals. For this reason, Travel Services' reliance on *Menard* is again misplaced. *Menard* interpreted administrative code provisions regulating price comparisons in advertising. The

---

[5] It is undisputed the misrepresentations contained in Travel Services' posters and bylaws were made during the course of mail transactions.

court relied on the fact that the purpose of the regulations was to protect "the public" from deceptive advertising. *Menard*, 121 Wis. 2d at 203. Unlike the regulations at issue in *Menard*, § ATCP 127.44(15) prohibits misrepresentations directed at individuals. Under these circumstances, it makes sense that each misrepresentation to an individual would constitute a separate violation. This result is also consistent with the evident purpose of the legislature in creating this statutory scheme, for the reasons explained above in our discussion of Wis. Stat. § 100.171. Accordingly, we agree with the circuit court that Travel Services committed 3,536 violations of § ATCP 127.44(15).

## IV. Due process

■■

¶ 50.   Finally, Travel Services argues the restitution and forfeitures imposed by the circuit court violated Travel Services' right to due process.[6] Whether a party has been denied due process is a question of law that we review independently. *State v. Weissinger*, 2014 WI App 73, ¶ 7, 355 Wis. 2d 546, 851 N.W.2d 780. "[T]he concern of due process is fundamental fairness." *State ex rel. Lyons v. De Valk*, 47 Wis. 2d 200, 205, 177 N.W.2d 106 (1970). Due process requires, among other things, " 'that laws give the person of ordinary intelligence a reasonable opportunity to know what is pro-

---

[6] The State argues Travel Services' due process argument is untimely because it was first raised in Travel Services' motion for reconsideration. We need not address the State's timeliness argument because we reject Travel Services' due process argument on the merits. *see Turner v. Taylor*, 2003 WI App 256, ¶ 1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (when a decision on one issue is dispositive, we need not reach other issues raised).

hibited, so that he [or she] may act accordingly.' " *Elections Bd. v. Wisconsin Mfrs. & Commerce*, 227 Wis. 2d 650, 677, 597 N.W.2d 721 (1999) (quoted source omitted).

¶ 51.  In *Wisconsin Manufacturers & Commerce*, our supreme court stated a "deprivation of the due process right of fair warning can occur not only from vague statutory language, but also from unforeseeable and retroactive interpretation of that statutory language." *Id.* at 679–80. Travel Services argues the circuit court's judgment constituted an unforeseeable and retroactive interpretation of statutory language because neither the court's purported decision to shift the burden of proof regarding pecuniary loss nor its findings regarding the number of violations were supported by existing law. Travel Services therefore argues it had "insufficient warning that previously unarticulated interpretations of the applicable statutes would be employed against [it]." Travel Services also contends the circuit court's purported decision to shift the burden of proof regarding pecuniary loss violated Travel Services' right to procedural due process.

¶ 52.  Travel Services' due process arguments fail for the reasons addressed above. First, the circuit court did not shift the burden of proof to Travel Services. Contrary to Travel Services' assertion, the procedure the court used was consistent with *Tim Torres*. Thus, the court's restitution award did not violate Travel Services' due process right of fair warning or its right to procedural due process.

¶ 53.  Second, the circuit court's findings regarding the number of violations were supported by existing law. The court's findings were consistent with the plain language of the relevant statutes and regulations. *Menard*, the principal case on which Travel

Services relies, is distinguishable. Consequently, the circuit court's findings regarding the number of violations did not violate Travel Services' due process right to fair warning.

*By the Court.*—Judgment and order affirmed.