COURT OF APPEALS
DECISION
DATED AND FILED

**February 4, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2018AP1902**

STATE OF WISCONSIN

Cir. Ct. No.  2015CV455

IN COURT OF APPEALS
DISTRICT III

SHARON M. LAMBRECHT,

　　PLAINTIFF-APPELLANT,

　V.

BRUCE REMINGTON AND TERESA HESTEKIN,

　　DEFENDANTS-RESPONDENTS.

　　　　APPEAL from a judgment of the circuit court for Eau Claire County: RODERICK A. CAMERON, Judge. *Affirmed*.

　　　　Before Stark, P.J., Hruz and Seidl, JJ.

　　　　**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

　　　　¶1　　PER CURIAM.　Sharon Lambrecht, pro se, appeals a judgment that dismissed her lawsuit against Bruce Remington and his daughter, Teresa Hestekin

(collectively "Remington"), discharged a lis pendens recorded by Lambrecht, and awarded $10,000 in attorney fees to Remington pursuant to WIS. STAT. § 100.18 (2017-18).[1]  Lambrecht argues the circuit court erred by: (1) refusing to enforce the parties' settlement agreement; (2) refusing to admit the settlement agreement as evidence at trial; and (3) concluding that Lambrecht made a fraudulent representation under § 100.18.  Lambrecht argues, in the alternative, that the evidence did not support awarding $10,000 in attorney fees to Remington under § 100.18.  For the reasons discussed below, we reject Lambrecht's arguments and affirm the judgment.

## BACKGROUND

¶2      Lambrecht filed suit against Remington seeking a declaration of interest in two properties—one in Lyndon Station, Wisconsin, and one in Webster, Kentucky.  Lambrecht alleged that although the subject properties were titled in Remington's name, the parties agreed that Lambrecht was, in fact, the owner.  According to Lambrecht, the parties further agreed that the properties would be signed over to her at her request.  Lambrecht alleged that she paid all costs associated with the purchase, ownership, and improvement of the properties.  Lambrecht therefore sought an "extinguishment" of any interest Remington had in the properties.

¶3      Remington answered, denying Lambrecht's claims and asserting several counterclaims, including a counterclaim for fraudulent misrepresentation pursuant to WIS. STAT. § 100.18.  The parties reached a settlement agreement, which

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

included a stipulation for dismissal of the action. The matter was dismissed, but the circuit court retained jurisdiction to enforce the agreement.

¶4 The parties subsequently filed competing motions to enforce the settlement agreement, and the circuit court entered an order enforcing the agreement. After the parties filed additional motions to enforce the agreement, the court determined that its earlier conclusion regarding the validity of the settlement agreement was in error. Citing reasons explained at a January 29, 2018 proceeding, the court concluded that the settlement agreement was unenforceable "because it was vague, indefinite, and did not arise to the dignity of an enforceable contract." The court thus determined that the parties' "longstanding dispute" could only be settled at trial. In a footnote within its written order, the court stated that the settlement agreement would be admissible in evidence at trial because it is not hearsay and is relevant.

¶5 At the bench trial—which was held before a different judge—the circuit court ruled that the settlement agreement was inadmissible. The court ultimately found that Lambrecht did not have an interest in either the Lyndon Station property or the Kentucky property and consequently dismissed her claims. The court granted judgment to Remington on his counterclaim for fraudulent representations in violation of WIS. STAT. § 100.18, and it awarded Remington attorney fees pursuant to that statute. This appeal follows.

## DISCUSSION

¶6 Lambrecht first argues the circuit court erred by deeming the settlement agreement unenforceable. Whether a settlement agreement is binding and enforceable is a question of law we review de novo. *Paul R. Ponfil Tr. v. Charmoli Holdings, LLC*, 2019 WI App 56, ¶13, 389 Wis. 2d 88, 935 N.W.2d 308.

3

In construing a settlement agreement, we apply traditional contract-construction principles. *State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶13, 257 Wis. 2d 421, 651 N.W.2d 345. A contract must be definite and certain as to its material terms and requirements in order to be enforceable. *See Ehlinger v. Hauser*, 2010 WI 54, ¶57, 325 Wis. 2d 287, 785 N.W.2d 328. Accordingly, vagueness or indefiniteness concerning a material term prevents the creation of an enforceable contract. *Ponfil Tr.*, 389 Wis. 2d 88, ¶18.

¶7 Here, the circuit court's written order reiterated that the reasons it determined the settlement agreement was unenforceable were explained at a January 29, 2018 proceeding. The transcript from that proceeding, however, is not part of the record on appeal. As both this court and the supreme court frequently observe, a reviewing court conducting a de novo review benefits from the analysis of the lower court. *See, e.g., Salfinger v. Fairfax Media Ltd.*, 2016 WI App 17, ¶13, 367 Wis. 2d 311, 876 N.W.2d 160. As the appellant, Lambrecht is responsible for ensuring that all relevant transcripts are in the record. *See* WIS. STAT. RULE 809.11(4). When an appellant fails to ensure a complete record, our review is limited to the portions of the record available to us. *See Ryde v. Dane Cty. Dep't of Soc. Servs.*, 76 Wis. 2d 558, 563, 251 N.W.2d 791 (1977). Further, when the record is incomplete, this court must assume that the missing materials support the circuit court's ruling. *State ex rel. Darby v. Litscher*, 2002 WI App 258, ¶5 n.4, 258 Wis. 2d 270, 653 N.W.2d 160. In any event, Lambrecht fails to establish how the circuit court erred by concluding the agreement was vague, indefinite and, thus, unenforceable.

¶8 Lambrecht suggests "[i]t appears that the difficulty identified by the circuit court was the absence of a specific price on the sale of the properties," but she provides no support for her assertion. Citing case law holding that the terms of

a settlement agreement require only an ascertainable and practical method to arrive at a sale price, *see Headstart Bldg., LLC v. National Ctrs. for Learning Excellence, Inc.*, 2017 WI App 81, ¶17, 379 Wis. 2d 346, 905 N.W.2d 147, Lambrecht contends that the settlement agreement in this case included such a method. Even assuming the absence of a specific price was the sole ground for the circuit court's decision, Lambrecht fails to show in what manner the court found the price requirement was lacking and why. Therefore, it is not clear that her cited case establishes circuit court error in this case. Ultimately, Lambrecht's claim that the court should have enforced the settlement agreement is undeveloped and falls below even the liberal thresholds of acceptability for pro se litigants. This court need not address issues so lacking in substance that for the court to decide the issues, it would first have to develop them on the litigant's behalf. *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶9 Next, Lambrecht concedes the trial judge had the power to reject the evidentiary ruling of the motion judge. *See Starke v. Village of Pewaukee*, 85 Wis. 2d 272, 283, 270 N.W.2d 219 (1978). Lambrecht nevertheless argues that the circuit court erred by refusing to admit the settlement agreement as evidence at trial. The decision whether to admit or exclude evidence is committed to the circuit court's discretion. *Martindale v. Ripp*, 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698. We affirm discretionary decisions if the court applied the correct law to the facts of record and reached a reasonable result using a rational method. *Id.*

¶10 Here, Lambrecht asserts that the settlement agreement should have been admitted as an admission by a party opponent under WIS. STAT. § 908.01(4)(b)1. Lambrecht further argues that the agreement would not have been hearsay if it was used to cross-examine Remington. *See* § 908.01(4)(a)1. Lambrecht, however, misapprehends the basis for the circuit court's decision to

5

exclude the settlement agreement from evidence. The court excluded the agreement under WIS. STAT. § 904.08, which provides that settlement agreements are not admissible to prove liability. Under the statute:

> Evidence of furnishing or offering or promising to furnish, or accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

*Id.* The statute also sets forth an exception that permits, but does not require, the admission of settlement evidence when it "is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, proving accord and satisfaction, novation or release, or proving an effort to compromise or obstruct a criminal investigation or prosecution." *Id.* Lambrecht, however, fails to show that any of the statutory exceptions apply in this case.

¶11 Lambrecht also argues the circuit court erred by concluding that she made a fraudulent representation under WIS. STAT. § 100.18. That statute, as it applies here, prohibits a person from making an untrue, deceptive or misleading representation of any kind to the public with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of real estate. WIS. STAT. § 100.18(1). The statute further provides: "Any person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees." WIS. STAT. § 100.18(11)(b)2. Therefore, to prevail on his § 100.18 counterclaim, Remington had to prove that: (1) Lambrecht made a representation to the public with the intent to induce an obligation; (2) the representation was

untrue, deceptive or misleading; and (3) the representation caused Remington a pecuniary loss. *See Novell v. Migliaccio*, 2008 WI 44, ¶44, 309 Wis. 2d 132, 749 N.W.2d 544.

¶12    In October 2014, Lambrecht held herself out as Remington's agent when she rented the Lyndon Station property to Michael and Shallie Daines. Lambrecht signed the Daines's lease agreement as landlord/agent and retained all rental payments. In June 2015, Lambrecht held herself out as landlord when renting the Lyndon Station property to Gene Malueg and April Hess. As with the previous tenants, Lambrecht kept the rental payments as if she were the owner. Lambrecht similarly acted as the owner/agent during the timber harvest at Lyndon Station, directing that payments for that harvest be paid to her. Remington testified that he did not authorize Lambrecht to act as his agent regarding property rentals or timber harvest payments. Remington further confirmed that he had received none of the rental or harvest payments.

¶13    The record supports the conclusions that Lambrecht made untrue, deceptive or misleading representations to the public with the intent to induce an obligation, and that these representations caused a pecuniary loss to Remington in the form of lost rental and timber harvest payments. To the extent Lambrecht disputes Remington's testimony, the circuit court, as fact-finder, is the ultimate arbiter of credibility. *See State v. Going Places Travel Corp.*, 2015 WI App 42, ¶27, 362 Wis. 2d 414, 864 N.W.2d 885.

¶14    Citing *Novell*, Lambrecht nevertheless argues that to sustain the WIS. STAT. § 100.18 claim, the representations must have been made to Remington. *Novell*, however, is distinguishable on its facts. There, the plaintiff home buyer alleged that the home seller made misrepresentations to induce a home sale, and the

plaintiff suffered pecuniary loss as a result. *Novell*, 309 Wis. 2d 132, ¶¶9-21. The home seller argued that the plaintiff was required to prove reasonable reliance on the misrepresentations as an element of a § 100.18 claim. *Id.*, ¶¶21, 25. The *Novell* court disagreed, but it concluded that the reasonableness of a plaintiff's reliance may be relevant in considering "whether a representation materially induced (caused) the plaintiff to sustain a pecuniary loss." *Id.*, ¶53. From this statement, Lambrecht argues that there must be proof the representation was made to Remington; otherwise, the reasonableness of the reliance could not be a defense. *Novell* discussed the "plaintiff's reliance" because there, the "public" to whom the representation was made was also the plaintiff. Under the plain language of the statute, however, there is no requirement that Lambrecht's untrue, deceptive or misleading representations had to be made to Remington to be actionable under § 100.18. The statute requires only that Remington suffered pecuniary loss because of a violation of the statute.

¶15 Lambrecht argues, in the alternative, that the evidence did not support awarding Remington $10,000 in attorney fees under WIS. STAT. § 100.18. We disagree. When the reasonableness of a circuit court's award of attorney fees is challenged on appeal, we affirm unless the court erroneously exercised its discretion. *Jandrt v. Jerome Foods, Inc.*, 227 Wis. 2d 531, 575, 597 N.W.2d 744 (1999).

¶16 When exercising its discretion in the context of a fee-shifting statute as here, the circuit court must use the "lodestar" approach. *Johnson v. Roma II-Waterford LLC*, 2013 WI App 38, ¶17, 346 Wis. 2d 612, 829 N.W.2d 538. "Under the lodestar approach, the starting point is the number of hours reasonably expended, multiplied by a reasonable hourly rate, with upward or downward adjustments then made after taking other relevant factors into account." *Lynch v.*

*Crossroads Counseling Ctr., Inc.*, 2004 WI App 114, ¶35, 275 Wis. 2d 171, 684 N.W.2d 141. The "other relevant factors" include but are not limited to the factors set forth in the rule of professional responsibility that addresses the fees that attorneys are ethically permitted to charge. *Johnson*, 346 Wis. 2d 612, ¶17. The court, however, must not simply "eyeball" a fee request. *Id.*, ¶26.

¶17     Here, the circuit court determined Remington was entitled to attorney fees involving the Lyndon Station property and asked Remington's counsel about the amount of the attorney fees that had accrued related to that property. Counsel estimated a total bill of "at least $15,000," with work related to the Lyndon Station property comprising at least two-thirds of that amount. Counsel stated that he had an hourly rate of $275, which the court noted was "not the highest rate in this area." The court, absent any objection by Lambrecht, tentatively ordered an award of $10,000 in attorney fees, representing two-thirds of counsel's total bill.

¶18     Lambrecht argues that there is no evidence to support the attorney fee award, emphasizing there was no indication of the actual hours spent on the case. This court, however, may search the record for reasons supporting the circuit court's exercise of discretion. *State v. Pharr*, 115 Wis. 2d 334, 343, 340 N.W.2d 498 (1983). The case was tried to the court over three days, and the trial included over 100 offered exhibits. The court awarded attorney fees for just over thirty-six hours of work, based on counsel's hourly rate. Twenty-one total hours were spent at trial.[2] Counting    two-thirds    of    that    time—or    fourteen    hours—we    are    left    with

---

[2] While the record includes the time trial commenced on each day, it does not include the adjournment time. Therefore, we take judicial notice of CCAP records reflecting when each day of trial was adjourned. CCAP is an acronym for Wisconsin's Consolidated Court Automation Program. The online website reflects information entered by court staff. *See Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522.

approximately twenty-one hours of trial preparation related to the Lyndon Station property.[3] Based on the complexity of this case, which was further complicated by litigation involving parties who were, at times, self-represented, we conclude the record supports the circuit court's discretionary decision to award attorney fees for approximately thirty-six hours of work.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[3] This constitutes two-thirds of the thirty-one and one-half hours total that counsel would have spent preparing for trial.